**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul James POSEY, Defendant-
Appellant.**

**No. 73–2080.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 7, 1974.

Decided Sept. 5, 1974.

R. Barry Wehrman, Covington, Ky., for defendant-appellant; Wehrman & Wehrman, Covington, Ky., on briefs.

James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on briefs.

Before PHILLIPS, Chief Judge, PECK, Circuit Judge, and McALLISTER, Senior Circuit Judge.

McALLISTER, Senior Circuit Judge.

Paul James Posey appeals from a judgment of conviction, entered on a jury verdict, of violation of Title 18 U. S.C., Section 922(a)(1), which makes it a crime to carry on the business of dealing in firearms and ammunition without a license.

Appellant was the co-manager of the Club Mustang, a bar in Newport, Kentucky, along with a co-defendant, Stanfield, who is not before us in this case. Appellant was arrested because of his sale of firearms to a federal agent, as well as the finding of firearms as the result of a search carried out on the Club premises.

■ Appellant assigns error on several grounds: He contends that the trial court erred in refusing to grant a pretrial motion to continue the case in order to secure the presence of one William Poore as a material witness, and that the court erred in refusing to compel the government agent to answer questions relevant to the said Poore's being an informer.

With regard to Poore, appellant's counsel vigorously maintained that the Government should have been ordered to produce Poore as a witness on appellant's behalf, or that, if the Government should not produce Poore, the case should be continued until the Government produced him.

Appellant knew from the time that he was first arrested that he wanted Poore as a witness. He had known Poore for a considerable time, knew his aunt and his wife, and the location of his house. However, appellant did not subpoena Poore until the day before the trial. At that time the trial day had been set for three months. Appellant said that he had Poore's phone number, but that Poore had had it changed. However, appellant knew the phone number of appellant's aunt and called her several times about having Poore get in touch with him. According to appellant, the aunt said she would have her brother ask Poore to come over and see appellant, but he never did. Appellant finally located the address and telephone number of Poore from Poore's wife, but when he called, Poore was not there. Later he called him by phone and asked him to come over and talk with his attorney.

Poore told appellant that he had been picked up four or five times on narcotic charges, that no charges had been filed against him, but that, if he came to the trial as a witness, he was afraid they would place charges against him. However, appellant said that he made arrangements to meet with Poore on the Tuesday of the week of the trial. On the evening of the first day of the trial, appellant said he had again called Poore. Mrs. Poore had answered the phone and told him: "Well, he's not going to come over to court."

The court then intervened to question appellant:

Q. "How long have you known about Mr. Poore being a material witness?

A. Ever since he came into the bar . . . and . . . introduced Mr. Early as a friend that was in the penitentiary with him.

     *    *    *    *    *    *

Q. Did you ever have him subpoenaed?

A. I didn't know where to get hold of him at. . . .

Q. I know, but you knew this case was set for trial. You have known that for some time. * * * "

It appeared that although the case had been set for trial several weeks in advance, appellant's counsel said they had not had a subpoena issued because they did not know where to find Poore in the Greater Cincinnati area. The court then inquired:

"But you were in contact with him all this time? * * * Did you make any effort to take his deposition?"

To the reply of counsel that he didn't know where Poore was, the court stated:

"I thought you said he talked to him on the telephone."

Counsel replied: "Just this week."

After the court had again stated that the trial was assigned for September, he observed that Posey knew where to call him, that he had talked to his wife, and that they knew where his home was. Counsel replied that they had just found

that out. The court found no merit in appellant's claim that he could not have subpoenaed Poore in time for the trial when he knew several weeks before that he wanted to have him as a witness, and within days before the trial had been talking by phone with Poore's aunt, his wife, and with Poore himself, whose address, at that time, appellant knew. The trial judge properly denied appellant's request for a continuance, in the light of all the facts appearing on the record at the time of the court's action.

■ Counsel for appellant made much of the claimed error of the court in not allowing questions to be asked that had, as their purpose, the attempt to identify and show that Poore was an informer. The court's ruling, in the light of the record before us, had no remote or conceivable bearing on appellant's commission of the offense with which he was charged, and was a proper course to follow in protecting the sources upon which the execution of the criminal law often depends. Whether Posey had engaged in the firearms business in violation of the statute was a question of fact for the determination of the jury.

■ Appellant further advanced the contention that he was denied due process because of the court's and the Government's conduct with regard to two witnesses, Thomas Stenger and Dennis Ray Holland, called by the defendant-appellant at the preliminary hearing. Subsequently, Stenger was arrested on a charge of transporting guns across a state line and delivering them to an unlicensed dealer. On the trial of the instant case, Stenger refused to answer questions concerning the transfer of four Titan pistols, introduced by the Government, on the ground that it might tend to incriminate him.

As to Holland, his testimony on the trial of Posey's case was interrupted by the United States Attorney, who asked if counsel might approach the bench, and when that request was granted and counsel for both sides approached the judge, the United States Attorney informed him that the Government intend-

ed to charge Holland and Stenger in a separate charge involving the same evidence before the court in the instant case, and suggested to the court that it might advise the witness of his rights "to preclude any problem that is to come up because I am sitting here and I know what is going to happen." The court then stated he would advise Holland of his rights, and told him that, under the law, he did not have to give evidence as to any fact, or to answer any questions that he felt might have a tendency to incriminate him. Holland then said he would not testify until he saw legal counsel. Defendant's attorneys then delivered themselves of certain sentiments to the effect that "for the United States to have these facts for this period of time, to know this matter had been set, and then we call this witness and when this man testified, when this man testified at Lexington, Kentucky, and they knew he testified and testified in June of this year, and they have a record and they wait until today, that is undue pressure." It is difficult to understand the contention that Government counsel's conduct, as above observed, constituted undue pressure, and resulted in denial of due process. After the court had informed witness Holland of his constitutional right to refuse to testify as to any matters that might have a tendency to incriminate him, Holland, out of the hearing of the jury, said to the judge:

"When Mr. Gantenbein came up to my place to talk to me, I would have taken it as a threat if I didn't say certain things, that he was going to have me charged with something."

Counsel for appellant, after Holland's statement, addressed himself to the court as follows:

"I move to dismiss. There is too much pressure on these people."

The court replied:

"I don't know what they have."

Counsel for appellant:

"They come up here and advise you in this court today that they consider arresting this man or making a charge."

The Court:

"I overrule your motion."

The record then states: "THEREUPON THE COLLOQUY AT THE BENCH ENDED."

There is something rather peculiar about Holland's statement. Nothing that Gantenbein said, or was alleged to have said, prevented Holland from appearing and taking the stand as a witness on behalf of appellant, or seems to have made any impression on him as bearing on any testimony he should give. It was neither threat nor alleged threat that affected his testimony. The statement of Holland was vague and ambiguous at best. He did not say directly that he was threatened by Gantenbein. He did not state what it was he claimed Gantenbein said. His statement was not sworn to. It was made outside the hearing of the jury. It was not subject to rebuttal by the agent. Finally, no specific argument was made by counsel in open court or in briefs on appeal as to any prejudicial reversible error as a result of the incident.

Clearly, the circumstances with regard to Stenger and Holland cannot be the bases of a reversal of the judgment in this case. The Government has broad discretion in deciding whom to charge with crime, and there is no serious allegation that Stenger's indictment was without basis, or that it constituted a denial of the equal protection of the laws. As to Holland, the Government, it seems to us, had an obligation to inform him that he was under investigation in connection with the set of facts about which he was testifying. Appellant implies that there was never any attempt to charge Holland; but we cannot conclude that this is the case from the facts in the record before us. The Government has no obligation to pursue every prosecution that it commences, nor to charge every suspect that it investigates, or intends to charge. There is no proved cause for criticism of the actions of the Government in regard to these two witnesses. From the record before us, and the circumstances of the witnesses and parties, we certainly are un-

able to suspect or conclude that the Government was guilty of any dubious tactics. Were this not so, the court could, of course, send relevant parts of the record to the Attorney General and the Secretary of the Treasury for further investigation and action; but nothing in this case warrants such action, and speculation based on inconsequential shreds of evidence found by the wayside are not justification for such rigorous proceeding.

We come, then, to the facts surrounding the arrest of appellant and the seizure of guns and ammunition at his place of business. Agent John Early stated in a pretrial hearing that he met one William Poore in a bar in Newport, Kentucky, in March, 1972, asked him if he knew where the Mustang Bar was, and that upon Poore's telling him, they went over to the Mustang together. Agent Early had then asked Poore if he would introduce him to Paul Posey, the manager. It appeared in subsequent pretrial testimony that Poore introduced Early to Posey. At trial, however, when the defense began cross-examining Early, the case became mired down from appellant's standpoint when the court ruled that he would not allow the defense to interrogate Early on the question whether Poore was an informer.

■ After the court's ruling, the case proceeded with Government counsel's introducing evidence of the sale of firearms and ammunition to federal agents by appellant Posey. When the bar was raided, seven firearms were found, a number in their original boxes. When one witness sold appellant a gun, he testified that appellant used a large reference book to help establish the price. Early testified that on the day he met Posey, the latter told him he dealt in firearms, selling them as soon as they came in. There was substantial evidence to justify the jury in arriving at its verdict that Posey was guilty of violating the statute. See United States v. Day, 476 F.2d 562 (C.A.6, 1973), United States v. Wilkening, 485 F.2d 234 (C.A. 8, 1973).

■ We are then confronted by the defense that appellant was the victim of entrapment by the federal agents, an unusual defense in that he claims he was entrapped into violating a law, that he also claims he did not violate in the first place.

In United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366, it is observed that in cases involving entrapment, the focus of inquiry is on the "predisposition" of the defendant to commit the crime, rather than on the Government's activities. In this Circuit, it was declared in United States v. Ambrose, 483 F.2d 742, 746 (1973): "[O]nly when undisputed facts establish that the criminal design originated with the Government agent, that the agent implanted in the mind of an innocent person the disposition to commit the offense * * * can we conclude that entrapment was established as a matter of law." The evidence of appellant's predisposition, and the lack of any evidence that the agents implanted in an innocent person's mind the disposition to commit the offense, cause the complete failure of appellant's effort to show entrapment.

■ Appellant contends that the trial judge should have suppressed the evidence seized during the search because the original affidavit for the warrant was lost. A copy of this affidavit was available, but it contained some added typed matter, which may or may not have been in the original. No claim is made that, without such possible added matter, there was any lack of probable cause. Nor do counsel tell us what additional matter may have been typed into the copy of the affidavit. We are of the view that the contention advanced is without merit. There is no claim that there was lack of probable cause for the issuance of the search warrant. There is a presumption that a magistrate has properly performed his duty with regard to whether an affidavit for a warrant showed probable cause, United States v. Haskins, 345 F.2d 111, 113 (C.A.6, 1965), and this presumption appellant

has not attempted to rebut. Moreover, there is no showing of even a trace of prejudice.

■ With regard to reversible error in the trial court's charge to the jury, it is contended that in explaining to the jury the intent of. Congress in enacting the law under which appellant was charged, the trial judge stated that "a pistol or a machine gun, or a sawed-off shot gun is for one purpose only," and that because of the fact that no machine gun was involved in the case, appellant was so greatly prejudiced that he is entitled to a new trial. The trial judge did not state or imply that Posey had sold a machine gun, and the jury, having seen the evidence, could not have been misled. The mention of a "machine gun" considering all the circumstances of the case was a matter strictly *de minimis*, and certainly not anything of a prejudicial reversible nature.

There appearing no error in the conduct of the case or in the instruction of the court, the judgment entered on the jury verdict by Judge Swinford is affirmed.