**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leonard Joseph YANNOTT,
Defendant–Appellant.**

No. 93–2006.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 1, 1994.

Decided Dec. 16, 1994.

Certiorari Denied Feb. 21, 1995.

See 115 S.Ct. 1172.

---

Jeffrey E. Theodore, Asst. U.S. Atty. (argued and briefed), Grand Rapids, MI, for plaintiff-appellee.

Melvin Houston (argued and briefed), Detroit, MI, for defendant-appellant.

Leonard Joseph Yannott, pro se.

Before: MILBURN, SUHRHEINRICH, and LAY*, Circuit Judges.

MILBURN, Circuit Judge.

Defendant Leonard Joseph Yannott appeals his jury convictions for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g), and possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d). On appeal, the issues are (1) whether the district court properly denied defendant's motion to quash or dismiss the indictment for lack of jurisdiction over the offenses charged, (2) whether the district court properly admitted incriminating statements made by defendant to investigating officers, (3) whether the district court properly denied defendant's motion to dismiss the indictment where defendant sought to have the court rather than the jury determine the issue of whether the weapon he possessed was a "firearm," and (4) whether the district court erred by allowing the government to present evidence of defendant's prior conviction for escaping prison where proof of a felony conviction was an element of the offense of felon in possession of a firearm. For the reasons that follow, we affirm.

* The Honorable Donald P. Lay, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

## I.

### A.

Defendant Leonard Joseph Yannott is a Native American Indian. On June 30, 1991, defendant attended a party at the home of Roger Lovell, which was located near Peshawbestown, Michigan, on part of an Indian reservation for the Grand Traverse Band of Ottawa and Chippewa Indians. While at the party, defendant threatened to shoot another guest, Brenda White Eye, and pulled a sawed-off shotgun and pointed it at her. White Eye told Vincent Chippewa and Stephanie Southbird that defendant had a gun. Chippewa and Southbird forcibly removed the gun from defendant. The gun was a .20-gauge sawed-off shotgun manufactured by Harrington and Richardson.

On July 1, 1991, Chippewa turned the gun over to the Grand Traverse Band tribal police. On July 17, 1991, Joseph Chambers, captain of the tribal police, contacted defendant. After being advised of his *Miranda* rights, defendant signed a waiver and indicated that he wanted to talk. Defendant stated that he knew he was at the party and that he had "messed up." J.A. 207.

The tribal police turned the gun over to the Bureau of Alcohol, Tobacco and Firearms (ATF), which determined that the gun had a partially broken firing pin. On August 28, 1991, Michael Marquardt, a special agent with the ATF, contacted defendant as part of the ATF's investigation. After defendant was advised of his *Miranda* rights, he indicated that he understood his rights and wished to waive them. Defendant gave rational responses to Marquardt's questions and did not appear to be either intoxicated or suffering from any injuries or illnesses. Marquardt did not make any threats or promises or use any force to cause defendant to make statements. During the interview, defendant admitted that although he could not recall the details, he apparently was carrying a shotgun and pulled it on some girls at the party. Marquardt testified at trial that while the gun had a partially broken firing

pin, he was able to make it capable of firing a projectile by removing the barrel and inserting part of a standard nail in the firing pin hole. This procedure required only a screwdriver and took approximately 50 seconds to accomplish.

The gun in question was examined by Richard Turner, a firearm specialist with the ATF, who testified for the government at trial. Turner, who stated that he was familiar with the definition of firearm under federal law, testified that a firearm for purposes of 18 U.S.C. § 921(a)(3) was "any firearm which will expel a projectile by the action of an explosive, one that is designed to expel a projectile, [or] any weapon which is readily converted to expel a projectile." J.A. 311–12. He testified that the gun in question was a firearm under federal law. He testified that the firing pins of certain guns are interchangeable and that he had made the gun in question operable by replacing the broken firing pin with a different firing pin, a process that took no more than 10 minutes to complete.

Leon Byrd testified as a firearms expert on defendant's behalf. Although it was Byrd's understanding that a firearm had to be operable in order to be a firearm under federal law, Byrd agreed that even with a broken firing pin the gun in question was still "designed" to expel a projectile. Byrd also testified that defendant was not experienced enough to make the gun operable, but he conceded that an individual's knowledge is not part of the definition of firearm under federal law.

### B.

On December 17, 1992, the grand jury issued a two-count indictment against defendant Leonard Joseph Yannott. Count one charged defendant with knowingly, wilfully, and unlawfully possessing a firearm in or affecting interstate commerce after having been convicted of a crime punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g). Count two charged defendant with receiving and possessing a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d).

Defendant was arraigned and entered pleas of not guilty on January 14, 1993.

On February 2, 1993, defendant filed a motion to quash or dismiss the indictment and a motion in limine to prevent introduction into evidence certain incriminating statements made by defendant before the indictment was filed. In his motion to quash, defendant argued that the district court was without jurisdiction to hear the case because all events alleged in the indictment occurred on an Indian reservation. In his motion in limine, defendant argued that defendant's statements to law enforcement officials were inadmissible based upon Federal Rules of Evidence 609(b) and 804(b). The district court concluded that Rule 609(b), which addresses impeachment by evidence of conviction of a crime, did not limit the admission of defendant's prior conviction because it was relevant to an essential element of the offense of felon in possession of a firearm, and that Rule 804(b), which makes admissible those hearsay statements which are against the declarant's interest, was inapplicable. Instead, the district court ruled that the statements were admissible as admissions by a party-opponent under Federal Rule of Evidence 801(d)(2)(A). Accordingly, both motions were denied.

On March 26, 1993, defendant filed a second motion to dismiss all charges against him. This motion argued that the sawed-off shotgun involved was not a firearm as defined under federal law because its firing pin was broken and could not be readily repaired. The district court also denied this motion.

On March 31, 1993, defendant filed a motion in limine agreeing to stipulate to the element that defendant was a convicted felon required for the offense of felon in possession of a firearm as charged in count one. This motion sought to preclude the government from introducing evidence of defendant's nine prior felony convictions. This motion in limine was granted by the district court on April 5, 1993. On that date, the government filed a motion requesting permission to submit evidence on one of defendant's convictions in lieu of his stipulation. The district

court treated the government's motion as a request to reconsider its earlier ruling and decided to allow evidence concerning one of defendant's convictions—a 1982 conviction for escaping prison.

On April 6, 1993, a jury trial commenced. On April 8, 1993, the jury returned guilty verdicts on both counts, and a final judgment was entered on June 22, 1993. Defendant filed this appeal on July 8, 1993, pursuant to the district court's order under Federal Rules of Appellate Procedure 4(a)(1), which authorizes the district court to extend the period for filing a notice of appeal upon a showing of excusable neglect.

## II.

### A.

Defendant argues that the district court improperly denied his motion to quash or dismiss the indictment for lack of jurisdiction over the offenses charged. Specifically defendant asserts that the district court lacked jurisdiction for two reasons: (1) defendant was already punished by the tribal court thus precluding jurisdiction under 18 U.S.C. § 1152, and (2) neither of the two offenses with which defendant was charged are included in the Major Crimes Act, 18 U.S.C. § 1153, which grants federal courts exclusive jurisdiction over certain major offenses.

■ Questions of subject matter jurisdiction are questions of law that are reviewed de novo. *Greater Detroit Resource Recovery Auth. v. EPA,* 916 F.2d 317, 319 (6th Cir. 1990); *Cardinal v. United States,* 954 F.2d 359, 362 (6th Cir.1992). In the words of the Supreme Court, "Criminal jurisdiction over offenses committed in 'Indian country,' 18 U.S.C. § 1151, 'is governed by a complex patchwork of federal, state, and tribal law.'" *Negonsott v. Samuels,* — U.S. —, —, 113 S.Ct. 1119, 1121, 122 L.Ed.2d 457 (1993).

■ The Indian Country Crimes Act, 18 U.S.C. § 1152, "operates explicitly to extend the coverage of a body of law to Indian country." *United States v. Cowboy,* 694 F.2d 1228, 1234 (10th Cir.1982). It provides:

Except as otherwise expressly provided by law, the general laws of the United

States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1152. In interpreting § 1152, the Eighth Circuit has stated:

"The first paragraph of the section extends to Indian country the general laws of the United States that make criminal certain acts committed within the sole and exclusive jurisdiction of the United States. The section refers only to those laws where the situs of the offense is an element of the crime. The second paragraph exempts from the purview of the laws referred to in paragraph one Indians who offend the person or property of another Indian. The exemption does not encompass the laws of the United States that make actions criminal wherever committed."

*United States v. Blue,* 722 F.2d 383, 385 (8th Cir.1983) (quoting *Stone v. United States,* 506 F.2d 561, 563 (8th Cir.1974)). This interpretation is further supported by the Supreme Court's recent decision in *Negonsott,* — U.S. at —, 113 S.Ct. at 1121. In *Blue,* noting that it had reached the same conclusion in other cases, the Eighth Circuit continued:

18 U.S.C. § 1152 is not a predicate for general federal criminal jurisdiction in Indian country. Rather the scope of section 1152 is limited to the applicability or non-applicability of federal enclave laws, those laws passed by the federal government in the exercise of its police powers over federal property and now defined in the United States Code in terms of "special maritime and territorial jurisdiction of the United States," 18 U.S.C. § 7.

722 F.2d at 385 (quoting *United States v. White,* 508 F.2d 453, 454–55 (8th Cir.1974)); *see also United States v. Farris,* 624 F.2d 890, 896–97 (9th Cir.1980), *cert. denied,* 449 U.S. 1111, 101 S.Ct. 919, 920, 66 L.Ed.2d 839 (1981); *United States v. McGrady,* 508 F.2d 13, 16 (8th Cir.1974), *cert. denied,* 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975); *Walks on Top v. United States,* 372 F.2d 422, 425 (9th Cir.), *cert. denied,* 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967); *cf. United States v. Butler,* 541 F.2d 730, 733–34 (8th Cir.1976). Although this court has not previously interpreted § 1152, we adopt the Eighth Circuit's interpretation of § 1152 because it is consistent with our reading of the statute. We hold that § 1152 and its exceptions apply only to federal laws where the situs of the crime is an element of the offense; § 1152 and its exceptions do not affect the application of general federal criminal statutes to Indian reservations. *See United States v. Burns,* 725 F.Supp. 116, 121 (N.D.N.Y.1989).

■ In this case, defendant was charged with violating 18 U.S.C. § 922(g), possession of a firearm by a convicted felon, and 26 U.S.C. § 5861(d), possession of an unregistered firearm. Both of these statutes are federal laws of general applicability that make certain actions criminal regardless of where they are committed. *See* 18 U.S.C. § 922(g) (federal jurisdiction predicated upon interstate transportation or shipment of a firearm); 26 U.S.C. § 5861(d) (federal jurisdiction predicated upon failure to register a firearm with the National Firearms Registration and Transfer Record). The situs of the crime is clearly not an element of a violation of either statute. Consequently, because § 1152 and its exceptions are not implicated in the first instance, the district court was not deprived of jurisdiction because defendant was already punished by the tribal court, and the denial of defendant's motion to quash or dismiss the indictment on this ground was proper.

■ The Indian Major Crimes Act, 18 U.S.C. § 1153, provides:

(a) Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnaping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

(b) Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153. While § 1153 confers to the United States exclusive jurisdiction over certain major crimes, it applies only to the thirteen crimes specifically enumerated in that section. Furthermore, it does not strip the federal courts of jurisdiction of those crimes not enumerated therein; in fact, federal courts retain jurisdiction over violations of federal laws of general, non-territorial applicability. *United States v. Young,* 936 F.2d 1050, 1055 (9th Cir.1991) (per curiam). Accordingly, § 1153 has no bearing on the jurisdiction in this case because neither of the offenses with which defendant was charged are enumerated in that section, and the district court did not improperly deny defendant's motion to quash or dismiss the indictment on this ground. Because federal courts retain jurisdiction over violations of federal laws of general, non-territorial applicability, the district court had jurisdiction to hear this case.

**B.**

Defendant argues that the district court improperly admitted incriminating statements which he made to investigating officers. Defendant does not argue on appeal, as he did in his pretrial motion to suppress, that the district court should have excluded the statements pursuant to Federal Rules of Evidence 609(b) and 804(b). Instead, defendant asserts that the statements should have

been excluded because they were not voluntary and that the district court's failure to determine the voluntariness of the statements requires reversal. The issue of voluntariness, however, was not raised below.

■■. Federal Rules of Criminal Procedure 12(f) provides that motions to suppress evidence be made prior to trial, and the failure to bring such a pretrial motion constitutes waiver of the issue. Fed.R.Crim.P. 12(b)(3), (f). We have previously held that under Rule 12, this court is "categorically without jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *United States v. Crismon*, 905 F.2d 966, 969 (6th Cir.1990) (per curiam). "This court strictly applies Rule 12(b), and has repeatedly held that the failure to raise 12(b) motions in a timely fashion precludes appellate review." *United States v. Oldfield*, 859 F.2d 392, 396 (6th Cir.1988). Furthermore, the district court is under no obligation to suppress evidence sua sponte. *Crismon*, 905 F.2d at 969; *see also United States v. Miller*, 987 F.2d 1462, 1464 (10th Cir.1993) (stating that there is no duty on the part of the district court to hold a hearing on the voluntariness of a defendant's confession where the question of voluntariness is not timely raised). Therefore, we hold that because defendant failed to raise the specific issue of voluntariness in the district court, he has waived his right to raise that issue on appeal.[1]

### C.

Defendant argues that the district court improperly denied defendant's motion to dismiss the indictment because the weapon he possessed was not a firearm under federal law. Specifically, defendant asserts that the weapon he possessed was not a firearm because (1) the design of the weapon was altered or changed as a result of the broken firing pin, (2) the weapon was rendered incapable of firing a projectile in its current condition because of the broken firing pin, and (3) there is no evidence that defendant was aware of how the weapon could be "readily restored" as the term is defined under 26 U.S.C. § 5845(d).

■ As an initial matter, defendant contends that the issue of whether the weapon was a firearm was not a question of fact and thus should have been determined by the court rather than the jury. While the determination of what constitutes a firearm under the relevant statute is a question of law, the determination of whether a particular weapon fits within the legal definition of a firearm under that statute is a question of fact. *See United States v. Shriver*, 989 F.2d 898, 907 (7th Cir.1992) (concluding that the determination of whether certain devices possessed by the defendant constituted devices proscribed by the criminal statutes was an issue of fact that must be determined by the jury); *see also United States v. Posey*, 501 F.2d 998, 1000 (6th Cir.1974) (stating that the question of whether the defendant was engaged in the firearms business in violation of the criminal statutes was a question of fact within the province of the jury). The determination of factual issues is solely within the province of the jury. *Bass v. United States*, 239 F.2d 711, 716 (6th Cir.1957). "No matter how conclusive the evidence may be in a criminal case on a controverted material fact, the trial judge cannot make the finding or withdraw the issue from the jury." *United States v. McKenzie*, 301 F.2d 880, 882 (6th Cir.1962). Because this factual dispute went to an essential element of the crimes, it was properly left to the jury's determination.

■ The crimes with which defendant was charged required the government to prove that defendant possessed a "firearm." *See* 18 U.S.C. § 922(g); 26 U.S.C. § 5861(d).

---

1. Defendant cites *United States v. Rigsby*, 943 F.2d 631, 635 (6th Cir.1991), *cert. denied*, ⸺ U.S. ⸺, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992), *United States v. Newman*, 889 F.2d 88, 94–95 (6th Cir.1989), *cert. denied*, 495 U.S. 959, 110 S.Ct. 2566, 109 L.Ed.2d 748 (1990), and *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989), in support of his argument that the district court should have determined the voluntariness of defendant's statements. However, those cases are inapposite because they all involve an appeal of the ground for the district court's ruling on a motion to suppress evidence. This appeal raises a ground that was not advanced or considered in the district court.

For purposes of 18 U.S.C. § 922(g), possession of a firearm by a convicted felon, firearm is defined to mean:

> (A) any weapon (including a starter gun) which will or is *designed to or may readily be converted* to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(2) (emphasis added). The following definitions apply for purposes of 26 U.S.C. § 5861(d), possession of an unregistered firearm:

> (a) Firearm.—The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length....
>
>    *     *     *     *     *     *
>
> (d) Shotgun.—The term "shotgun" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and *shall include any such weapon which may be readily restored to fire a fixed shotgun shell.*

26 U.S.C. § 5845 (emphasis added).

Defendant argues that the design of the weapon was altered or changed as a result of the broken firing pin. In *United States v. Ruiz,* 986 F.2d 905, 910 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 145, 126 L.Ed.2d 107 (1993), the Fifth Circuit held that a weapon was a firearm under 18 U.S.C. § 921(a)(3) even though its hammer had been filed down. The court reasoned that the filing down of the weapon's hammer merely temporarily altered the weapon's capability and that the substance of the weapon's design had not been changed to effect another purpose. *Id.* Applying similar reasoning, we conclude that the broken firing pin merely temporarily altered the weapon's capability and did not so alter the weapon's design that it no longer served the purpose for which it was originally designed.

■ Defendant states that the weapon was rendered incapable of firing a projectile in its current condition because of the broken firing pin. While that point is not disputed, the law is clear that a weapon does not need to be operable to be a firearm. *Ruiz,* 986 F.2d at 910; *United States v. Jokel,* 969 F.2d 132, 134 (5th Cir.1992) (per curiam) (finding that based on the testimony of a witness, a reasonable jury could have concluded that a hinge on a shotgun was a trigger, thus making the shotgun a firearm within the meaning of 26 U.S.C. § 5845(d)); *United States v. Perez,* 897 F.2d 751, 754 (5th Cir.) (stating that an inoperable firearm is nonetheless a firearm), *cert. denied,* 498 U.S. 865, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990); *United States v. York,* 830 F.2d 885, 891 (8th Cir.1987) (per curiam) (rejecting a defendant's argument there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c)(1), in that the weapon was not a firearm under 18 U.S.C. § 921(a)(3); the defendant claimed the gun was inoperable because it had no firing pin and the cylinder did not line up properly with the gun barrel), *cert. denied,* 484 U.S. 1074, 108 S.Ct. 1047, 98 L.Ed.2d 1010 (1988); *United States v. Harris,* 792 F.2d 866, 868 (9th Cir.1986) (stating that a weapon does not need to be operable to be a firearm within the meaning of 18 U.S.C. § 921(a)(3)); *United States v. Barno,* 340 F.Supp. 1326, 1328 (D.D.C.1972) (determining that the possession of a sawed-off shotgun from which the butt had been removed violated the law where the weapon could be readily restored to an operable condition within the meaning of 26 U.S.C. § 5845(d)); *United States v. Cosey,* 244 F.Supp. 100, 102 (E.D. La.1965) (concluding that a shotgun was a firearm within 26 U.S.C. § 5848 even though it did not have a firing pin because an ordinary wire nail could be substituted for the firing pin). *But see United States v. Thompson,* 202 F.Supp. 503, 507 (N.D. Cal. 1962) (holding that a shotgun without a firing pin was not a firearm within 26 U.S.C.

§ 5848). Thus, this argument is without merit.

Defendant also asserts that there is no evidence that defendant was aware of how the weapon could be "readily restored" as the term is defined under 26 U.S.C. § 5845(d). As defendant's expert concedes, there is no requirement that a defendant know how to restore a weapon in order for the weapon to be considered a firearm. *See* 18 U.S.C. § 921(a)(3). It is sufficient if the weapon was designed to expel a projectile or could readily be converted to do the same. Therefore, it is irrelevant that defendant may not have known how to alter the weapon to render it operable. Accordingly, the district court did not improperly deny defendant's motion to dismiss the indictment.

### D.

Finally, defendant argues that the district court erred by allowing the government to present evidence of defendant's prior conviction for escaping prison as proof of an element of the offense of felon in possession of a firearm in violation of 18 U.S.C. § 922(g), as charged in count one of the indictment. Defendant claims this was error because the district court originally granted defendant's motion in limine to preclude the government from introducing evidence of defendant's nine prior felony convictions since the government agreed to stipulate to the element that defendant was a convicted felon.

A ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court. *United States v. Luce,* 713 F.2d 1236, 1239 (6th Cir.1983), *aff'd,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). This preliminary ruling allows the parties to consider the court's ruling in formulating their trial strategy. *Id.* However, the district court may change its ruling at trial for whatever reason it deems appropriate. *Id.* The rationale is that facts may have come to the district court's attention which it did not anticipate at the time of its initial ruling. *Id.* This same rationale supports permitting a district court to change its ruling prior to trial if the reasons would support changing the ruling at trial. Likewise, allowing a change prior to trial would further advance the rationale of the motion in limine itself by allowing the parties to consider the changed ruling in formulating their trial strategy. Therefore, we hold that the district court may change its ruling on a motion in limine where sufficient facts have developed to warrant the change.

In this case, the district court granted defendant's motion in limine to preclude the government from introducing evidence of defendant's nine prior felony convictions because "[t]he danger of unfair prejudice substantially outweighs the probative value of the nine convictions." J.A. 89. It goes without saying that introducing evidence of only one felony conviction does not present the same danger of unfair prejudice as introducing evidence of nine felony convictions. Thus, the district court did not abuse its discretion by modifying its ruling to allow evidence of one felony conviction.

Furthermore, the government is not limited to establishing only one prior felony conviction to prove that a defendant is a convicted felon for purposes of 18 U.S.C. § 922(g)(1). *See United States v. Ford,* 872 F.2d 1231, 1238 (6th Cir.1989), *cert. denied,* 495 U.S. 918, 110 S.Ct. 1946, 109 L.Ed.2d 309 (1990). In fact, the government is not required to accept the defendant's offer to stipulate that he is a convicted felon in lieu of presenting evidence of defendant's prior felony convictions. *United States v. Burkhart,* 545 F.2d 14, 15 (6th Cir.1976); *United States v. Smith,* 520 F.2d 544, 548 (8th Cir.1975), *cert. denied,* 429 U.S. 925, 97 S.Ct. 328, 50 L.Ed.2d 294 (1976). Therefore, the district court did not commit error by allowing the government to establish the one requisite felony conviction, even in the face of defendant's offer to stipulate that he is a convicted felon.

### III.

For the reasons stated, the judgment of the district court is AFFIRMED.