**Robert V. ADAMS, et al.  Plaintiffs**

v.

**NVR HOMES, INC., t/a Ryan Homes, et al.  Defendants**

**No. CIV H–99–846.**

United States District Court, D. Maryland.

April 30, 2001.

---

Pamela D. Marks, Robert Brager, Mark A. Turco, Baltimore, MD, Beveridge & Diamond, PC, Monica La Polt, Law Office, Baltimore, MD, Benjamin F. Wilson, Beveridge and Diamond PC, Washington, DC, for Plaintiffs.

Steven A. Allen, Hodes Ulman Pessin and Kate PA, Arnold M. Weiner, Weltchek, et al., Baltimore, MD, Randall M. Lutz, Hodes Ulman Pessin and Katz PA, Towson, MD, Beverly Ann Turk, Law Office, Baltimore, MD, Susan M. Souder, Law Office of Susan Souder PA, Catonsville, MD, Mark H. Kolman, Dickstein Shapiro Morina and Oshinsky LLP, Washington, DC, Robert William Pommer, III, Dickstein, Shapiro, Morin & Oshinsky, Washington, DC, Edward E. Sharkey, Law Office, Baltimore, MD, John Agar, Law Office, Washington, DC, Howard G. Goldberg, Goldberg, Pike & Beschee, Baltimore, MD, Sharon K. Engelhard, Goldberg Pike and Besche PC, Baltimore, MD, Andrew D. Levy, Dana Whitehead McKee, Brown Goldstein and Levy LLP, Baltimore, MD, Richard L. Nilsson, Brizendine, Berge & Tripoda, Timonium, MD, Terrence Michael McShane, Lee & McShane, PC, Washington, DC, Laurence C. Fauth, Law Office, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER

HARVEY, Senior District Judge.

This civil action is scheduled for a jury trial to commence on May 7, 2001. Presently pending before the Court are the following motions *in limine:*

(1) Plaintiffs' motion *in limine* to exclude irrelevant and unduly prejudicial information;

(2) Plaintiffs' motion *in limine* to exclude Ryan's expert witness Jack Matson;

(3) Plaintiffs' motion *in limine* concerning statements before the jury;

(4) The Ryan Defendants' motion *in limine* to exclude evidence which has not been produced in discovery;

(5) The Ryan Defendants' motion *in limine* to exclude testimony of plaintiffs' experts;

(6) The Ryan Defendants' motion *in limine* to exclude or limit the expert testimony of plaintiffs' expert Dr. Paul McHugh; and

(7) The Ryan Defendants' motion *in limine* to preclude plaintiffs from making arguments or presenting evidence contrary to the undisputed facts as determined by the Court in its Memorandum and Order of March 22, 2001.

At the pretrial conference held on April 6, 2001, a schedule was set by the Court for the briefing of these pending motions.

Memoranda and exhibits in support of and in opposition to these motions have been filed by the parties and reviewed by the Court. No hearing is necessary. *See* Local Rule 105.6. Following its review of the parties' submissions, the Court has concluded that one of the motions should be denied and that the other motions should be granted in part and denied in part.

## I

### *Applicable Principles*

██ A ruling on a motion *in limine* is no more than a preliminary or advisory opinion that falls entirely within the discretion of the district court. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir.1994). The primary purpose of an *in limine* ruling is to streamline the case for trial and to provide guidance to counsel regarding evidentiary issues. *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir.1983), *aff'd* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

In seeking to exclude evidence which the other side proposes to introduce at the trial, each side in this case has relied on Rule 403, F.R.E. In its entirety, Rule 403 provides as follows:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

██ The decision to exclude relevant evidence pursuant to Rule 403 is committed to the sound discretion of the trial court. *United States v. Love*, 134 F.3d 595, 603 (4th Cir.1998); *Reed v. Tiffin Motor Homes, Inc.*, 697 F.2d 1192, 1199 (4th Cir. 1982). In its consideration of issues presented by Rule 403, the Fourth Circuit has indicated that it "generally favor[s] admis-

sibility, and will find undue prejudice only if there is a 'genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *United States v. Wells*, 163 F.3d 889, 896 (4th Cir.1998) (quoting *United States v. Bailey*, 990 F.2d 119, 123 (4th Cir.1993)). If evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly." *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir.1996).

## II

### *Plaintiffs' Motions*

#### (a)

### *Plaintiffs' Motion In Limine To Exclude Irrelevant and Unduly Prejudicial Information*

██ Relying on Rules 402 and 403, F.R.E., plaintiffs have moved for the entry of an Order excluding the following evidence at the trial: (1) testimony regarding any arrests of plaintiffs; (2) testimony regarding any allegations of infidelity by any one of the plaintiffs; (3) testimony regarding any acts of childhood sexual abuse visited upon a plaintiff; and (4) testimony regarding any abortions undergone by plaintiffs. According to plaintiffs, these traumas occurred long ago, and the prejudicial impact of the evidence outweighs its limited probative value.

Responding to this motion, the Ryan Defendants contend that the evidence in question is admissible since it is relevant to plaintiffs' claims that they have suffered emotional and psychological injuries as a result of defendants' allegedly wrongful conduct. The Ryan Defendants maintain that the testimony which plaintiffs seek to exclude has a direct bearing on plaintiffs' mental and emotional state. Defendants

argue that the probative value of the evidence is not substantially outweighed by the other factors set forth in Rule 403.

Pursuant to the Order of Bifurcation entered by the Court, Phase I of the trial will not involve consideration by the jury of the damages issues. Clearly, the evidence which plaintiffs seek to exclude may not be used by counsel for the Ryan Defendants in cross-examining any one of the plaintiffs following his or her direct testimony during Phase I of the trial. Moreover, counsel for Defendants may not mention the evidence in question either during counsel's opening statement at the outset of Phase I or during counsel's opening statement at the outset of Phase II.

Whether or not this evidence can be presented after a plaintiff has testified during Phase II of the trial will not be determined by the Court until after that plaintiff has presented testimony concerning the emotional damages which he or she has sustained. At that time, the Court will consider out of the presence of the jury Defendants' proffer concerning the expected cross-examination of that plaintiff. The Court will then apply the principles of Rule 403 and will weigh the prejudicial effect of the evidence against other pertinent factors.

Several plaintiffs will apparently claim at the trial that their sexual life has been disrupted as a result of the wrongful conduct of the Ryan Defendants. Evidence of a male plaintiff's impotence, evidence of spousal infidelity, evidence of childhood sexual abuse visited upon a female plaintiff and evidence of a spouse's alcoholism may or may not be admissible under Rule 403 at Phase II of the trial, depending upon

the direct testimony of that particular plaintiff. It is doubtful that evidence of arrests will satisfy the requirements of Rule 403, but this question also must await presentation during Phase II of the trial of the direct testimony of the plaintiff who was arrested.

(b)

*Plaintiffs' Motion in Limine to Exclude Ryan's Expert Witness Dr. Jack Matson*

█ Plaintiffs seek to exclude entirely any opinion testimony of Dr. Jack Matson, Ph.D., an expert witness of the Ryan Defendants, on grounds that the proffered testimony is irrelevant and unreliable. It is argued that this Court's March 22, 2001 Memorandum and Order has rendered the proposed testimony of Dr. Matson irrelevant under Rules 401 and 402. In addition, plaintiffs claim that the opinions offered by Dr. Matson do not meet the requirements for admissibility under Rule 702, and do not meet the standards for the reliability of expert testimony set forth by the Supreme Court in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *General Electric Co. v. Joiner,* 522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

After methane was discovered at Calvert Ridge in September 1998, Dr. Matson was engaged by the Ryan Defendants upon the recommendation of a Howard County government official.[1] On behalf of the Ryan Defendants, Dr. Matson reviewed the situation at Calvert Ridge and participated in

---

1. Dr. Matson is a professor of environmental engineering at Pennsylvania State University. He has a B.S. and M.S. in chemical engineering and a Ph.D. in environmental engineering. Dr. Matson has testified as an expert witness in numerous courts throughout the country, and he has authored many publications, including *Effective Expert Witnessing,* (3rd ed.1999).

efforts to remediate the site. Pursuant to Rule 26(a)(2), F.R.Civ.P., Dr. Matson prepared an expert report which expressed three primary opinions as follows:

*Opinion 1*

Ryan Homes exercised reasonable and prudent care in response to the discovery of methane gas in the Calvert Ridge subdivision.

*Opinion 2*

The methane gas initially detected would not have created an explosive hazard, and it will not be a threat in the future.

*Opinion 3*

Plaintiffs' experts do not support their opinions with facts and data to show there is a health and safety concern at Calvert Ridge.

Matson Report at 1.[2] These three opinions are based upon documents supplied by counsel, peer reviewed scientific literature, reports of plaintiffs' experts and Dr. Matson's own education and experience. *Id.* at 1.

After considering the parties' arguments, the Court concludes that Dr. Matson may not testify during Phase I of the trial. As indicated by the Court's Order of Bifurcation, the issues to be presented to the jury are whether the Ryan Defendants made negligent misrepresentations to one or more of the plaintiffs and whether the Ryan Defendants acted negligently in their sale of homes to one or more of the plaintiffs. Dr. Matson's opinion that defendants exercised reasonable and prudent care in response to the discovery of methane gas in the Calvert Ridge subdivision is not relevant to the liability determinations which the jury will be asked to make in Phase I of the trial. At issue is the conduct of the Ryan Defendants *before* homes were sold to the plaintiffs. Dr. Matson has no expertise with respect to how a subdivision should be developed when built over a reclaimed quarry. The expert testimony proffered in support of Dr. Matson's Opinion 1 is relevant only to the standard of care for remediating a site *after* contamination has been discovered but is not relevant to acts and statements of the Ryan Defendants before construction even began. Accordingly, the Court concludes that the testimony in question is irrelevant and may not be presented during Phase I of the trial, inasmuch as that testimony does not shed light on the standard of care to be followed by a professional builder during the process of developing and selling residential dwellings in a subdivision. However, Dr. Matson may testify in support of his Opinion 1 at Phase II of the trial.

With reference to Dr. Matson's Opinion 3, plaintiffs have now indicated that they do not intend to offer the expert testimony of Dr. Kester and Dr. Libicki during Phase I of the trial.[3] Evidence will apparently not be presented by plaintiffs relating to any health and safety risks posed by the presence of methane-generating material at Calvert Ridge before the homes were purchased. There is accordingly no need

---

**2.** At his deposition, Dr. Matson stated that his expert report contains at least two corollaries to these opinions: (1) "On-site soil and gas sampling results indicate no health and safety threat from toxics or methane at Calvert Ridge," and (2) "Overall, the gas detectors tested by Brook in the homes did alarm below 25% LEL ... [and] a significant number had much greater sensitivities than specified, which may account for alarm activations in the absence of [Howard County Fire Department] verifications." Matson Report at 14–15.

**3.** Plaintiffs assert that the testimony of Dr. Kester and Dr. Libicki would be presented only if Dr. Matson were to testify during Phase I and if it was then necessary to rebut his expert opinion.

for Dr. Matson to present his Opinion 3 during Phase I. Since Dr. Kester and Dr. Libicki will not be testifying, there would be no relevancy to Dr. Matson's testimony that facts and data do not support the opinions of these two experts that health and safety concerns existed at Calvert Ridge.

Nevertheless, the Court has concluded that Dr. Matson would be entitled to testify during Phase II of the trial. During Phase II, he may present testimony in support of his Opinion 2 and testify that the methane gas detected in September of 1998 and thereafter remediated would not thereafter have created an explosion hazard and that it would not be a threat in the future. His opinions would be germane to establishing the reasonableness and duration of the plaintiffs' claims that they sustained emotional injuries. At Phase II of the trial, Dr. Matson may present his expert opinion concerning the generation and mitigation of methane gas at Calvert Ridge and his knowledge of related facts, including any information communicated to plaintiffs concerning the success of the remediation efforts undertaken by the Ryan Defendants. He may also testify at Phase II that any methane which existed in the vicinity of plaintiffs' homes is emanating from land owned by the Brantly Defendants and that any injuries sustained by plaintiffs were therefore proximately caused by conduct of the Brantly Defendants.

■ However, Dr. Matson may not render an opinion concerning the duration of plaintiffs' reasonable "window of anxiety," as discussed by the Court of Appeals of Maryland in *Faya v. Almaraz*, 329 Md. 435, 455–56, 620 A.2d 327 (1993). Dr. Matson is not a psychologist nor a psychiatrist and is not qualified to offer an expert opinion as to any aspect of plaintiffs's mental condition. Based on Dr. Matson's testimony concerning the nature, extent, reasonableness and effectiveness of defendants' remedial efforts undertaken after September of 1998, counsel for the defendants may argue to the jury that the "window of anxiety" was a short one. However, no opinion as to the duration of this period of time may be presented by Dr. Matson. Whether or not injury after a certain date "became extremely unlikely and thus, as a matter of law, might be deemed unreasonable," *Faya*, 329 Md. at 455, 620 A.2d 327, is a question which the parties may raise with the Court after all relevant evidence has been presented.

There is no merit to plaintiffs' contention that Dr. Matson's testimony during Phase II of the trial should be excluded under *Daubert* and its progeny. The Court is satisfied that Dr. Matson is well qualified to render the opinions proffered by him and that the scientific testimony to be presented by him is both relevant and reliable. The Court concludes that the testimony to be presented by Dr. Matson at Phase II of the trial will, pursuant to Rule 702, assist the trier of fact.

For these reasons, plaintiffs' motion *in limine* to exclude the testimony of Dr. Jack Matson will be granted in part and denied in part.

(c)

*Plaintiffs' Motion in Limine Concerning Statements Before the Jury*

■ Plaintiffs have also moved the Court to enter an Order prohibiting counsel or non-governmental witnesses from making assertions in the presence of the jury about governmental determinations as to whether Calvert Ridge is a safe place to live. Relying on Rule 103(c), F.R.E., plaintiffs seek the entry of an Order prohibiting counsel or non-governmental witnesses from asserting in the presence of the jury that the United States Environ-

mental Protection Agency (the "EPA"), the Maryland Department of the Environment (the "MDE") and the Howard County government have all concluded that Calvert Ridge is a safe place to live. According to plaintiffs, none of these governmental agencies has ever opined that Calvert Ridge is a safe place to live.

In response, the Ryan Defendants contend that they should be permitted to introduce evidence pertaining to investigations made by the MDE and the EPA, as well as evidence pertaining to the determinations made by these agencies as to the condition of the Calvert Ridge properties. According to the Ryan Defendants, the evidence in question is relevant to both liability and damages issues in this case.

The investigations in question were undertaken *after* methane was detected in the Calvert Ridge subdivision in September of 1998. The evidence in question therefore may not be presented during Phase I of the trial. However, this evidence is relevant to the damages issues presented and it may be introduced by the Ryan Defendants during Phase II of the trial.

Although evidence pertaining to the MDE and EPA investigations and determinations is relevant and admissible during Phase II, the actual contents of reports made by these agencies should be accurately characterized by counsel for the Ryan Defendants. None of these reports state that Calvert Ridge is a "safe place to live." Some of the reports state that "hazardous waste" or "hazardous substances" were not found at the site. In referring to these reports, counsel for the Defendants should accurately quote the precise language used. However, counsel would thereafter be permitted to argue by inference that these government agencies concluded that Calvert Ridge was a safe place to live. Counsel for plaintiffs in turn

would then be permitted to challenge that argument and contend that no such conclusion was ever reached by the agencies in question.

## III

### Motions of the Ryan Defendants

#### (a)

### The Ryan Defendants' Motion to Exclude Evidence which has not been Produced in Discovery

The Ryan Defendants have moved for the entry of an Order excluding from presentation at the trial the following evidence which they claim was not produced in discovery: (1) the so-called Angeletti documents; (2) evidence relating to any alleged injuries or damages suffered by plaintiffs' minor children; and (3) evidence not produced during discovery relating to other alleged injuries or damages.

#### (i)

### Angeletti Documents

Donald and Kathleen Angeletti are plaintiffs in this action. According to the Ryan Defendants, two documents exist which relate to the alleged detection of methane in the Angeletti's house during the period from July 2, 1999 to August 28, 1999. One or more of these documents indicates that the Angelettis used a private digital meter which detected methane in their house during the July–August, 1999 period. Information relating to the use of this digital reader was provided by Kathleen Angeletti during her deposition which was taken on October 2, 2000. However, copies of certain documents mentioned by her in her deposition were not produced at the time, but were withheld on the ground that they were privileged. Later, during the deposition of James Chan on December 21, 2000 (merely nine days before the close of discovery), counsel for plaintiffs

showed counsel for the Ryan Defendants the notes in question which had previously been withheld as privileged.

The Ryan Defendants argue that the documents in question should not have been withheld in October, 2000 and that, when they were finally produced, it was too late to question other witnesses and experts about them. Relying on Rule 37(c)(1), the Ryan Defendants argue that the documents in question should be excluded as evidence to be presented at the trial. This Court would agree.

Ms. Marks, one of plaintiffs' attorneys, asked the Angelettis in June of 1999 to place in their basement a methane monitor with a digital display. She requested at the time that Kathleen Angeletti maintain a record or log of the meter's readings. The log was marked "Attorney–Client Work Product." [4] Although she segregated the log from materials produced to the Defendants, she forgot about its existence. When Mrs. Angeletti's deposition was taken on October 2, 2000, Mr. Brager, a partner of Ms. Marks, was at the time unaware of the existence of both the digital meter and the log. It was not until December 21, 2000 that the log in question was produced.

Under the circumstances here, the Court will exclude the documents in question which should have been produced during the deposition of Mrs. Angeletti on October 2, 2000. Indeed, plaintiffs now concede that the log itself was not privileged, and they have belatedly produced it. The Ryan Defendants should not be prejudiced by the forgetfulness of Ms. Marks when the log was first provided to her by Mrs. Angeletti, nor by the fact that Ms. Marks and Mr. Brager did not communicate with each other concerning the existence of either the digital meter or the log prior to the taking of Mrs. Angeletti's deposition. Counsel for the Ryan Defendants had the right to have the log produced at an early stage of the case so that they and their experts could have reviewed its contents and so that they and their experts would have been in a better position to challenge plaintiffs' witnesses who might testify at the trial concerning the contents of the log.

(ii)

*Damages Claimed by Plaintiffs' Minor Children*

■ The Ryan Defendants further contend that plaintiffs should not be permitted to introduce at the trial any evidence relating to any alleged injuries or damages suffered by the plaintiffs' minor children. According to the Ryan Defendants, such evidence should be excluded because it was not produced during discovery in this case. The Court would agree that plaintiffs' minor children are not entitled to recover damages in this case, not because discovery as to such damages has not been provided, but because plaintiffs have not presented competent evidence that their minor children have been injured as a result of the Ryan Defendants' negligence. In their opposition to this motion *in limine* of the Ryan Defendants, plaintiffs refer to their responses to defendants' interrogatories and to the deposition testimony of plaintiffs taken in this case. In their answers to interrogatories and in depositions, plaintiffs indicate that they are seeking to recover in this case damages for emotional harm suffered by their children. The evidence in question includes the following subjects: (1) children's activities impeded during their play

---

4. No privilege log was provided at the time to counsel for the Defendants as required by Rule 26(b)(5).

in yards and in basements; (2) distractibility, nervousness and sleeping problems of children; (3) disruption of children's performance in school; (4) reactions of children at birthday parties when the Fire Department responded to methane alarms; and (5) nightmares and migraine headaches suffered by certain children. On the record here, this Court concludes that all of this evidence must be excluded.

Although children of some of the plaintiffs were named as additional plaintiffs in this case, the children themselves did not purchase homes from the Ryan Defendants. No actionable representations, whether negligent or otherwise, were made by the Ryan Defendants to plaintiffs' children. Moreover, it is questionable whether the duty of due care owed by the Ryan Defendants to the adult plaintiffs as the purchasers of homes at Calvert Ridge was likewise owed to plaintiffs' children. Whether or not plaintiffs' children may maintain a claim of negligence against the Ryan Defendants, proof of emotional damage suffered by them is lacking. Only the adult plaintiffs are expected to testify in support of the children's claims of emotional distress. No psychiatric experts are being called by plaintiffs to testify about the children's emotional problems. Plaintiffs have not identified in the Pretrial Order any of the children's physicians or any mental health professionals or school teachers who will be called to testify in this case in support of damages claimed by the children. None of the children themselves will be testifying. Under the circumstances, the Court is satisfied that the adult plaintiffs must be precluded from testifying concerning any impact which their housing situation might have had on their minor children.

For these reasons, the Court concludes that plaintiffs will not be permitted to introduce at the trial any evidence relating to alleged injuries or damages suffered by their minor children.

(iii)

*Other Evidence Not Produced*
*During Discovery*

The Ryan Defendants further contend that plaintiffs may attempt to introduce other factual evidence of damages or injury as to which no discovery has been provided. They request that the Court require plaintiffs to proffer factual evidence intended to be introduced at the trial to support plaintiffs' claims for damages. That request will be denied.

Plaintiffs agree that the Court should exclude evidence in the possession of the other side which was requested and was held back during discovery. However, it is premature for the Court to attempt to identify each item of evidence which has been questioned and to decide at this time whether that evidence should be excluded. At the trial, the parties may object to the admission of evidence which has not been properly identified and produced during discovery. The Court will be in a much better position at that time to rule on these matters.

(b)

*The Ryan Defendants' Motion in Limine*
*To Exclude the Testimony of*
*Plaintiffs' Experts*

By way of this motion, the Ryan Defendants have asked the Court to enter an order excluding the expert testimony of three of plaintiffs' named experts, namely Janet Kester, Ph.D., Shari Libicki, Ph.D. and Thomas Jones. They also ask the Court to limit the expert testimony of Bernard A. Page, Jr. In support of this motion, the Ryan Defendants rely on Rules 104(a), 401, 402, 702 and 703, F.R.E. They further contend that the expert testimony in question is not admissible because the opinions rendered by these experts do not satisfy the requirements of *Daubert, Joiner* and *Kumho.*

*Daubert* requires that when considering the admissibility of an expert opinion under Rule 702, a federal judge must exercise a "gatekeeping responsibility" to insure that scientific, technical or other testimony based on specialized knowledge is both relevant and reliable. 509 U.S. at 589, n. 7, 600, 113 S.Ct. 2786. Before the Court can consider expert opinions of the sort relied upon here by plaintiffs, threshold standards for the admissibility of such evidence must be met. In performing its "gatekeeping" task, a district judge must engage in a two-part analysis. *United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir.), *cert. denied*, 515 U.S. 1168, 115 S.Ct. 2631, 132 L.Ed.2d 871 (1995). The Court must first make essentially a reliability inquiry and determine whether the proffered expert testimony consists of "scientific knowledge." *Id.* Second, the Court must inquire further to ascertain whether the proposed testimony is relevant, that is, whether under Rule 702 it will "assist the trier of fact." *Dorsey*, 45 F.3d at 813. In determining whether scientific expert evidence properly satisfies the reliability component of the test, the Supreme Court in *Daubert* held that a trial court should consider several factors: (1) whether the theory or technique used by the expert can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used; and (4) the degree of the method's or conclusion's acceptance within the relevant scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786; *Dorsey*, 45 F.3d at 813.

(i)

*Dr. Kester and Dr. Libicki*

Dr. Kester is a toxicologist and risk assessor who has coauthored guidelines for evaluating and remediating contaminated sites pursuant to the requirements of certain federal statutes. Based upon information provided to her, she has suggested that it is not possible to conclude that Calvert Ridge is a safe place to live. She has characterized the conditions at Calvert Ridge as an immediate and short term threat to human health, safety or sensitive environmental receptors because of the existence of methane gas in the soil. Dr. Libicki is a chemical engineer who has proffered testimony that the concentration of methane gas found in soil in and near plaintiffs' yards presents a risk of explosion and fire. Her testimony discusses how buried organic waste can generate methane gas which can travel through the ground into the homes of Calvert Ridge families. According to Dr. Libicki, once methane is accumulated inside a house and mixed with oxygen, a spark can ignite gases which are at concentrations above the lower explosive limits.

In responding to this motion *in limine* of the Ryan Defendants, plaintiffs have agreed not to call Dr. Kester and Dr. Libicki as expert witnesses during either Phase I or Phase II of the trial. They have, however, reserved the right to present the testimony of these experts as rebuttal witnesses.

The Court will not at this time rule on the admissibility of the testimony of Dr. Kester and Dr. Libicki if called as a part of plaintiffs' rebuttal case. There are many factors which must be considered before this Court will permit plaintiffs to present evidence by way of rebuttal to evidence presented by the Ryan Defendants in either Phase I or Phase II of the trial. If the plaintiffs intend to call either Dr. Kester or Dr. Libicki as rebuttal witnesses and if the Court permits them to do so, the

Ryan Defendants may at that time present objections to the admissibility of that testimony based on the Federal Rules of Evidence or on *Daubert* principles. Rulings on any such objections will be made during the trial itself.

### (ii)

### *Jones*

■ Thomas Jones has been identified by plaintiffs as a certified mapping scientist. In the Pretrial Order, Jones has not been listed as an expert who will necessarily be called to testify by the plaintiffs. Instead, both the expert testimony of Jones and his report [5] have been identified for use only as the need arises.

Jones reviewed aerial photographs of the Calvert Ridge site which had been taken between 1964 and 1998 in order to determine when and where there had been a "disturbance" or "disruption of normal surface cover." Since, as he testified at his deposition, a disturbance could be created by many innocuous activities such as cutting down trees and pulling up grass, Jones was unable to determine which of the plaintiffs' lots were located over an area which had previously been mined for sand and gravel nor could he express an opinion as to what areas had been excavated and as to what areas contained fill material. Jones further testified at his deposition that in order to do a really complete analysis of the site, he would need to look at some stereographic photos. However, he did not utilize this technique. According to Jones, stereographic photography would have enabled him to see objects in three dimensions and therefore be able to see depths and heights and to recognize features which would not necessarily be recognized by one looking at monoscopic photographs.

Following its review of Jones' deposition testimony, this Court concludes that it does not satisfy either the relevance component or the reliability component of the *Daubert* test. Jones was unable to determine which of the plaintiffs' lots were located over the area that had been previously mined for sand and gravel. He could not even express an opinion as to what areas had been excavated and what areas contained fill material. Since plaintiffs' claims are predicated upon the existence of a quarry and not upon the existence of general areas of "disturbance," the proffered testimony of Jones is irrelevant under Rule 702. It is not likely to assist the trier of fact to understand or determine a fact in issue. *See Daubert,* 509 U.S. at 592, 113 S.Ct. 2786.

Moreover, Jones' proffered testimony also fails to meet the reliability factors established by *Daubert* and its progeny. In his deposition, Jones admitted that to do a really complete analysis of the site, he would need to look at stereographic photographs. As he testified, stereographic photography would have enabled him to see objects in three dimensions and be able to recognize features which could not be recognized by looking at ordinary photographs. Since Jones did not employ stereographic photography, he has not utilized generally accepted scientific methodology, and his expert testimony is therefore not admissible under Rule 702. *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir.1998); *see also Cavallo v. Star Enterprise,* 892 F.Supp. 756, 760–61 (E.D.Va.1995), *aff'd in part,* 100 F.3d 1150, 1159 (4th Cir.1996).

For these reasons, the Court will grant the motion *in limine* of the Ryan Defen-

---

**5.** According to his deposition testimony, Jones himself did not prepare the expert report produced by him in discovery. This report was written by Pamela Marks, Esq., one of plaintiffs' attorneys, and was then sent to him for review.

dants as to the proffered expert opinions of Thomas Jones.

### (iii)

### *Page*

■ Bernard Page, Jr. is an experienced and certified real estate appraiser who performed appraisals of the value of plaintiffs' homes. As to each plaintiff family, he expressed four general opinions, including (1) the current unimpaired value of their home; (2) the current impaired value of their home; (3) the length of time that the value of the home would be impaired; and (4) the potential relocation costs of each family. Page's expert testimony will be presented during Phase II of the trial.

In their motion *in limine,* the Ryan Defendants seek to exclude only the testimony of Page relating to his opinion as to the length of time that the value of plaintiffs' homes will be impaired. In his report, Page concluded that the stigma associated with plaintiffs' homes "could last ten or perhaps more than ten years." This opinion is derived from Page's application of several factors, including his experience, his examination of other residential properties in Maryland in which perceived environmental problems have been reported to the public, and his review of the expert reports of Dr. Kester, Dr. Libicki and Raymond DeStephen. According to the Ryan Defendants, Page's subjective conjecture as to the period of time into the future that the value of plaintiffs' homes will be impaired due to the stigma of being located in Calvert Ridge does not satisfy the standards of *Daubert* and *Kumho.*

After considering the parties' arguments, this Court will not limit the expert opinion to be rendered by Page at the trial in the manner suggested by the Ryan Defendants. The Court is satisfied that the opinion in question is grounded upon " 'a reliable basis in the knowledge and experience in the discipline.' " *Kumho,* 526 U.S.

at 149, 119 S.Ct. 1167 (quoting *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786). Although *Daubert* commands that in court science must do the speaking and not merely the scientist, *see Cavallo,* 892 F.Supp. at 761, the discipline of real estate appraisal is not essentially scientific. Some aspects of Page's expert testimony are therefore inherently subjective and less susceptible to objective and independent validation. On the record here, this Court is satisfied that there is a reliable and reasonable nexus between Page's expert testimony and the underlying data.

Some of Page's data may be questioned because it is derived from the expert reports of Dr. Kester and Dr. Libicki which suggest that plaintiffs are presently at risk because of the existence of methane in the soil. Defendants also contend that Page has little or no first-hand experience in evaluating stigma arising as a result of negative publicity due to environmental contamination. However, considerations of this sort go to the weight and not to the admissibility of Page's testimony. Page's opinions are based on other reliable information such as facts pertaining to other properties which have suffered a long-term diminution in value as a result of the stigma associated with environmental contamination. Even though evidence may not exist as to any present danger to plaintiffs posed by the possible existence of methane gas in the vicinity of their homes, negative publicity about Calvert Ridge is a reliable factor which might lead to a decrease in the value of plaintiffs' homes. Accordingly, the Court has concluded that Page's ten-year projection for the time needed for plaintiffs' homes to return to their full market value is admissible testimony.

For these reasons, the Ryan Defendants' motion *in limine* will be denied as to the expert opinions of Bernard Page.

### (c)

*The Ryan Defendants' Motion in Limine To Exclude or Limit the Expert Testimony of Plaintiffs' Expert Dr. Paul McHugh*

The Ryan Defendants have also filed a motion *in limine* seeking to exclude or limit the expert testimony of Dr. Paul McHugh. Dr. McHugh is being called to testify during Phase II of the trial concerning the emotional damages sustained by the plaintiffs. Plaintiffs propose to offer the testimony of Dr. McHugh as a psychiatric expert to prove that each of them has suffered emotional injury and to establish a causal link between the Calvert Ridge situation and plaintiffs' emotional state.

The Ryan Defendants seek to limit Dr. McHugh's expert testimony in two ways. First, they ask the Court to exclude any epidemiological opinion evidence on grounds that it is irrelevant, confusing, prejudicial and will have minimum probative value. Second, relying on *Faya v. Almaraz*, 329 Md. at 455-56, 620 A.2d 327, the Ryan Defendants argue that any evidence that plaintiffs may have suffered psychological injury after the spring or summer of 1999 should be excluded as "unreasonable as a matter of law" on the ground that it does not fall within the plaintiffs' "reasonable window of anxiety."

Since 1975, Dr. McHugh has been Professor of Psychiatry, Psychiatrist–in–Chief and Director of the Department of Psychiatry at the Johns Hopkins University School of Medicine and the Johns Hopkins Hospital. He is a member of numerous professional boards and has authored more than one hundred papers in the field of psychiatry. Since 1993, Dr. McHugh has testified as an expert in court in some eleven different cases.

Dr. McHugh, in collaboration with Dr. Paul Romanoski, prepared an expert report (the "Report") in this case summarizing his findings and the bases for them. That Report has been produced pursuant to Rule 26(a)(2). Dr. Romanoski is an Associate Professor of psychiatry at both the Johns Hopkins University School of Medicine and its School of Public Health. According to the Report, Dr. Romanoski "has extensive training, experience, and expertise in psychiatric epidemiology—in which the unit under study is a population rather than an individual, and in the measurement and classification of psychiatric symptoms." Report at 1.

The contents of the Report are based upon half-hour clinical interviews with each plaintiff as well as "two standard assessment questionnaires—the Eysenck Personality Inventory as a means of estimating aspects of the enduring temperament of the subject, and the General Health Questionnaire (GHQ) as an external estimate of the subject's recent emotional state." *Id.* at 2. According to the deposition testimony of Dr. McHugh, the GHQ is a reliable and valid measure of psychiatric and psychological distress, which is "a general term for anxiety, worry, depression, discouragement, demoralization, fear, all of the imaginable emotional distress states . . . ." *Id.* at 45.

Dr. McHugh and Dr. Romanoski together conducted the interviews of each plaintiff which were described in the Report as "a psychiatric interview . . . that systematically reviewed the family history and 'life story' of each subject from birth through present, the history of any previous physical or mental disorder and its treatment, pattern of substance use, and life circumstances." *Id.* at 2. Based on the interviews, Dr. McHugh determined that all of the plaintiffs had experienced emotional distress in September 1998 when elevated levels of methane gas were first discovered

in three houses at Calvert Ridge. "This distress took the form of worry—and uncertainty—about financial, safety, and health implications of the discovery that their family homes were built over a waste dump." *Id.* at 3. The Report indicates that the type and degree of distress among the plaintiffs varied due to their own individual differences as well as due to differences in the number and frequency of methane alarms sounding in their homes. After each interview, Dr. McHugh and Dr. Romanoski discussed "the state of mind of each patient, the degree of distress" and then "independently decided on an index of distress" before reviewing the written results from the Eysenck and GHQ assessments. McHugh Deposition at 77, 118. The index of distress ("ID") ratings consist of a number between 0 and 4 that was assigned to each plaintiff. A score of 0 means "no psychiatric symptoms meeting threshold" and a score of 4 indicates "symptoms as severe as those found in most patients presenting for psychiatric treatment." Report at 6. According to Dr. McHugh's deposition testimony, the average ID rating for the plaintiffs was 1.52, which translates into a "minimum amount of symptoms" of distress. *Id.* at 177.

The scale for the ID ratings was based upon a scale using numbers 1 to 5 which was originally published in the early 1980s in connection with the Epidemiological Catchment Area ("ECA") program. Dr. Romanoski worked on the ECA program, which was a national research study organized by the National Institutes of Health in five cities, including Baltimore, that attempted to "discern the amount of psychiatric disorder in the population." McHugh Dep. at 29. As part of the study, more than 3,000 people in the Baltimore area completed written psychological tests, including the GHQ, and underwent clinical interviews. Similar to the plaintiffs here, the participants in the ECA program were assigned an index of distress based upon their interview and the results of their tests.

Dr. McHugh compared the plaintiffs' ID scores with a "scientifically selected probability sample of 810 domiciled persons from the general population examined by psychiatrists in Baltimore in the ECA study." Report at 6. He found that "the number and severity of psychiatric symptoms in the Calvert Ridge subjects to be more than twice that found in the ECA population." *Id.*

Dr. McHugh and Dr. Romanoski acknowledge in the Report that plaintiffs as individuals differ "in some particulars of concern and degree of distress." *Id.* at 6–7. Nevertheless, they determined that "identical provocation and the similar forms of mental distress that [plaintiffs] all report identify them as a group afflicted by a general anxious, depressed state of demoralization and discouragement due to their circumstances." *Id.* at 7. Summarizing, the Report concluded that "(1) These subjects have suffered and continue to suffer significant psychological distress caused by their housing situation; (2) This affliction is persistent and waxes and wanes; (3) Its resolution depends on the resolution of the housing situation; and (4) Until this housing situation is resolved, we anticipate that the affliction will continue." *Id.*

This Court will not on the record here exclude or limit the expert testimony of Dr. McHugh. The Court is satisfied that the epidemiological opinion testimony to be offered by him is admissible under Rule 403 because its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues or the misleading of the jury.

The Ryan Defendants argue that Dr. McHugh's analysis involved the measure-

ment and classification of psychiatric symptoms for a group and that no single plaintiff is entitled to a recovery for his or her alleged psychological injury by relying on evidence that he or she was part of a group which as a whole suffered non-specific, generalized psychological distress. Undoubtedly, the damages sustained by each individual plaintiff must be assessed separately. Indeed, plaintiffs concede that each of them must establish his or her own injury. Nevertheless, Dr. McHugh assigned an individual ID to each plaintiff after personally conducting an interview, and he also analyzed each plaintiff's written test results. Although Dr. McHugh's comparison of these findings with the control group from the ECA study may be questioned, such a challenge would go to the weight rather than the admissibility of his expert testimony and would not require that his testimony be excluded under either Rule 403 or Rule 702. This Court accordingly concludes that the epidemiological evidence to be presented by Dr. McHugh is relevant to his opinion that each plaintiff sustained emotional damage as a result of the conditions at Calvert Ridge.

In support of their motion to exclude or limit the expert testimony of Dr. McHugh, the Ryan Defendants refer to that part of his deposition testimony which indicated that the rating given by him to each plaintiff applied only to the evidence of distress shown by the plaintiff on the date of the interview. Defendants note that Dr. McHugh was unable to say during his deposition what the condition of each interviewed plaintiff was on any other date, and that he acknowledged that this litigation has contributed to the plaintiffs' stress. Defendants also argue that Dr. McHugh's testimony ignored unique and personal pre-existing factors which may have con-

tributed to or even caused the emotional distress of certain plaintiffs. But these challenges to the validity of Dr. McHugh's opinions go to the weight and not to the admissibility of Dr. McHugh's testimony. During cross-examination of Dr. McHugh, Defendants may challenge his opinions by making the same contentions as they have advanced here in support of their motion *in limine*.

The Court further concludes that it should not prohibit Dr. McHugh from giving his views concerning the duration of plaintiffs' emotional distress. As a result of his background, his epidemiological studies, and his interviews of the plaintiffs, Dr. McHugh is qualified to render an opinion as to the legitimate "window of mental anxiety" during which each plaintiff suffered emotional distress. Plaintiffs' damages "must be confined to injuries suffered during [their] legitimate window of mental anxiety" and after that point "any lingering injuries, as a matter of law, are no longer related to fear that is reasonable." *Faya*, 329 Md. at 459, 620 A.2d 327. The Court is not, before hearing all the evidence, prepared to consider Defendants' contention that as a matter of law each plaintiff may not recover for mental distress suffered after the spring and summer of 1999 when remediation efforts were concluded. This issue will be addressed after all of the evidence has been presented during Phase II of the trial, and an appropriate instruction will be given to the jury. Dr. McHugh's opinion concerning the duration of plaintiffs' emotional distress is relevant to that issue and may be presented during Phase II.

For the reasons stated, the Ryan Defendants' motion *in limine* to exclude or limit the expert testimony of Dr. McHugh will be denied.[6]

---

**6.** There is no merit to Defendants' generalized

contention that Dr. McHugh's expert testimo-

### (d)

*The Ryan Defendants' Motion in Limine To Preclude Plaintiffs from Making Arguments Or Presenting Evidence Contrary to Undisputed Facts As Determined by the Court*

The Ryan Defendants have also asked the Court to enter an Order precluding plaintiffs from making arguments or offering evidence contrary to certain facts determined by the Court in its Memorandum and Order of March 22, 2001. According to the Ryan Defendants, plaintiffs in the Pretrial Order have indicated that they intend to ignore findings made by the Court in ruling on the parties' motions for summary judgment.

In support of this motion *in limine,* the Ryan Defendants have presented a list of certain findings contained in the Court's 83–page Memorandum and Order of March 22, 2001. Many of those findings were made by the Court when it considered evidence relied upon by the plaintiffs in support of counts of the amended complaint which have now been dismissed. It is not possible for the Court at this stage of the case to know what statements will be made by plaintiffs' attorneys in their opening statement nor the nature and extent of the evidence to be presented in support of the claims asserted by plaintiffs under Counts VII and XII of the amended complaint. The parties are indeed bound by ultimate findings made by the Court as a matter of law in its prior ruling, so long as those findings have relevance to the issues of negligent misrepresentation and negligence which will be presented to the jury. Findings which were made by the Court and which pertained to elements of claims other than Counts VII and XII are not necessarily binding on the parties dur-

ing either the Phase I or the Phase II trial. Accordingly, the Court concludes that plaintiffs are entitled to present evidence in support of their claims of negligent misrepresentation and negligence so long as that evidence does not contradict earlier determinations which were made by the Court as a matter of law and which are directly relevant to the negligence and damages claims being tried.

In granting the Ryan Defendants' motion for summary judgment as to Count I of the amended complaint, the Court determined "that the conditions at Calvert Ridge do not present an imminent and substantial endangerment" and that plaintiffs had not "presented credible evidence that an immediate and serious risk of harm now exists if remedial action is not taken." (Slip op. at 21). In granting the Ryan Defendants' motion for summary judgment as to Count III of the amended complaint, the Court determined that a public nuisance does not exist at Calvert Ridge, *inter alia,* because "methane will explode only if it is mixed with oxygen in a confined space and then ignited" and because such "circumstances do not exist near the roads and sidewalks in Calvert Ridge." (Slip op. at 24–25). Plaintiffs state that they will not attempt to litigate those issues at the trial, and they have offered to refrain from introducing at the trial the testimony of experts who would address those determinations.

Insofar as the other items of evidence listed by the Ryan Defendants in their motion are concerned, it will be necessary for the Court to await the presentation by plaintiffs of their case before it considers the arguments now advanced by the Defendants. In support of their claim that

---

ny should be excluded or limited because it does not satisfy the requirements of *Daubert*

and Rule 702.

they are entitled to recover damages for emotional distress, plaintiffs themselves are indeed entitled to testify at Phase II of the trial that they fear for their safety and that this fear is based on reasonable concerns. The Ryan Defendants in turn will be permitted by cross-examination or otherwise to present to the jury evidence indicating that plaintiffs were overly sensitive, that they have overreacted to existing conditions at Calvert Ridge and that their fears are irrational.

## IV

### *Conclusion*

For all the reasons stated, it is this _____ day of April, 2001 by the United States District Court for the District of Maryland,

ORDERED:

(1) That plaintiffs' motion *in limine* to exclude irrelevant and unduly prejudicial information is hereby granted in part and denied in part;

(2) That plaintiffs' motion *in limine* to exclude Ryan's expert witness Jack Matson is hereby granted in part and denied in part;

(3) That plaintiffs' motion *in limine* concerning statements before the jury is hereby granted in part and denied in part;

(4) That the Ryan Defendants' motion *in limine* to exclude evidence which has not been produced in discovery is hereby granted in part and denied in part;

(5) That the Ryan Defendants' motion *in limine* to exclude testimony of plaintiffs' experts is hereby granted in part and denied in part;

(6) That the Ryan Defendant' motion *in limine* to exclude or limit the expert testimony of plaintiffs' expert Dr. Paul McHugh is hereby denied; and

(7) That the Ryan Defendants' motion *in limine* to preclude plaintiffs from making arguments or presenting evidence contrary to the undisputed facts as determined by the Court in its Memorandum and Order of March 22, 2001 is hereby granted in part and denied in part.