**UNITED STATES of America,**
**Appellee,**

v.

**Pedro RIVERA, Defendant–Appellant.**

**Docket No. 04–5480–CR.**

United States Court of Appeals,
Second Circuit.

Argued June 6, 2005.

Decided July 18, 2005.

tion of a firearm included its "frame or receiver." We affirm.

## BACKGROUND

The evidence offered at trial established the following. On February 8, 2003, two New York City police officers saw Rivera and two others allegedly smoking marijuana in front of a Bronx social club. When the officers approached, Rivera tried to get away, but he ultimately was arrested along with the other men. A search incident to his arrest revealed a loaded .380 caliber semi-automatic pistol in Rivera's pant leg. The weapon was subsequently determined to be inoperable because (1) the firing pin was broken, and (2) the firing-pin channel was peened over, or flattened.

Near the close of the government's case, Rivera moved, pursuant to Federal Rule of Criminal Procedure 29, for a directed verdict of acquittal. He contended that the evidence at trial was "legally insufficient because the weapon is simply inoperable" and "[i]t is not something that can be readily converted into a [weapon] that is capable of firing a projectile." The district court denied the motion, explaining that "[t]he case law outside the Second Circuit and in the district courts of this circuit is unanimous that inoperability is not a defense."

Rivera presented no witnesses. He was convicted on the single count of possession of a firearm by a convicted felon and sentenced principally to 63 months' imprisonment. This appeal followed.

## DISCUSSION

I. *An Inoperable Weapon is a "Firearm"* *Under 18 U.S.C. § 921(a)(3)*

■ Rivera argues that the weapon he possessed did not meet the statutory defi-

George R. Goltzer, New York, NY, for Defendant–Appellant.

Samidh Guha, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Peter G. Neiman, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before: WALKER, Chief Judge, JACOBS and LEVAL, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

This is a case about a gun that could not shoot. Defendant-appellant Pedro Rivera appeals from a judgment of the United States District Court for the Southern District of New York (Gerard E. Lynch, *Judge*) convicting him, following a jury trial, of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). On appeal, Rivera argues (1) that the jury's verdict was not supported by sufficient evidence because the defective weapon in question did not meet the definition of a "firearm" set forth in 18 U.S.C. § 921(a)(3), and (2) that the district court constructively amended the indictment by charging the jury that the defini-

nition of a "firearm" contained in 18 U.S.C. § 921(a)(3), and thus no reasonable juror could have found him guilty of violating § 922(g)(1), the felon-in-possession statute. He advances two arguments as to why the weapon is not a firearm: (1) that it is inoperable, or, alternatively, (2) that it has been has been redesigned and cannot "readily be converted to expel a projectile." His position is without merit.

Title 18 U.S.C. § 922(g) provides that "[i]t shall be unlawful for any person ... who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year" to "possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The term "firearm" is defined, in relevant part, as "any weapon ... which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; [or] the frame or receiver of any such weapon ...."[1] *Id.* § 921(a)(3).

Although we have yet to answer the question, every other circuit to consider it has concluded that an inoperable weapon falls within § 921(a)(3)'s definition of a "firearm." *See, e.g., United States v. Adams,* 137 F.3d 1298, 1300 (11th Cir. 1998); *United States v. Maddix,* 96 F.3d 311, 316 (8th Cir.1996); *United States v. Yannott,* 42 F.3d 999, 1006 (6th Cir.1994); *United States v. Perez,* 897 F.2d 751, 754 (5th Cir.1990); *see also United States v. Brown,* 117 F.3d 353, 354–56 (7th Cir.1997) (holding that inoperable gun is "firearm" for purposes of Sentencing Guidelines, where § 921(a)(3)'s definition of firearm was "identical, in all relevant respects," to Guidelines' definition). A number of district courts in our circuit have reached the same determination. *See, e.g., United*

*States v. Morales,* 280 F.Supp.2d 262, 272–73 (S.D.N.Y.2003); *United States v. Shaw,* 260 F.Supp.2d 567, 569–70 (E.D.N.Y.2003). We have no reason to conclude otherwise:

Where a weapon designed to fire a projectile is rendered inoperable, whether on purpose or by accident, it is not removed from the statute's purview; although it is temporarily incapable of effecting its purpose, it continues to be "designed" to fire a projectile. *See, e.g., United States v. Ruiz,* 986 F.2d 905, 910 (5th Cir.1993) ("[T]he filing down of the gun's hammer did not change the fact that the gun was designed to expel a projectile, but rather it merely temporarily altered the gun's capability to accomplish the purpose for which it was designed."); *Yannott,* 42 F.3d at 1006 ("[T]he broken firing pin merely temporarily altered the weapon's capability and did not so alter the weapon's design that it no longer served the purpose for which it was originally designed."); *United States v. York,* 830 F.2d 885, 891 (8th Cir.1987) (concluding, where gun was missing its firing pin and where its cylinder did not line up with gun barrel, that gun remained " 'designed to ... expel a projectile by the action of an explosive' " (quoting 18 U.S.C. § 921(a)(3); alteration in *York* )).

In this case, the testimony of Special Agent Robert Berger established at trial, and Rivera conceded at oral argument, that the gun was originally designed to fire a bullet. That the firing pin and firing-pin channel were damaged did not fundamentally alter the gun's design. Accordingly, we agree with the district court that an inoperable pistol is a firearm within the meaning of § 921(a)(3).

■ We recognize, however, that a weapon originally designed to fire a pro-

---

1. Special Agent Robert Berger explained at trial that the "frame or receiver" of a weapon includes the "handle part with the trigger."

jectile could perhaps be so redesigned or modified to remove it from § 921(a)(3)'s coverage—the second argument that Rivera presses. For example, a gun with a barrel filled with lead, maybe for use as a theatrical prop, might perhaps no longer be deemed "designed to" or "readily be converted" to fire a bullet. *See, e.g., United States v. Wada,* 323 F.Supp.2d 1079, 1081–82 (D.Or.2004) (finding guns deactivated or modified by, *inter alia,* drilling barrels and filling them with metal pins or rods were no longer "firearms" under § 921(a)(3) because it would be "extremely difficult" to convert them into operable weapons). Nothing of that sort happened to the weapon that Rivera possessed. The broken firing pin and the flattened firing-pin channel did not change the design of the weapon.

As the evidence showed that the weapon was "designed to ... expel a projectile by the action of an explosive," we need not consider whether it also showed that the weapon "may readily be converted to expel a projectile by the action of an explosive." The statute was clearly written in the disjunctive. The government need only show that the weapons was either "designed to" or "may readily be converted." 18 U.S.C. § 921(a)(3). It need not demonstrate both.

## II. *Constructive Amendment*

■ Rivera argues that the district judge erred in constructively amending the indictment by charging the jury that the offense of firearm possession could be satisfied by the possession of a "frame or receiver." "An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment." *United States v. Patino,* 962 F.2d 263, 265 (2d Cir.1992). We have explained that

[c]onstructive amendment occurs when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.

*United States v. Wallace,* 59 F.3d 333, 337 (2d Cir.1995) (internal quotation marks omitted). "The critical determination is whether the allegations and the proof 'substantially correspond.'" *United States v. Danielson,* 199 F.3d 666, 670 (2d Cir.1999) (per curiam) (quoting *Patino,* 962 F.2d at 266).

■ In his jury instructions, Judge Lynch defined a firearm to include both (1) a weapon designed to or readily convertible to expel a projectile, and (2) a frame or receiver of any such weapon. Because the indictment charged Rivera with the unlawful possession of "a firearm, to wit, a loaded .380 Davis Industries semiautomatic pistol," Rivera contends that the only offense of which he had notice was possession of a loaded gun and that, by instructing the jury that a firearm also encompasses a frame or receiver, Judge Lynch constructively amended the indictment. Rivera's argument is unpersuasive.

The statutory definition of a firearm includes a frame or receiver, and the indictment did not limit the definition of firearm to a loaded weapon. Rivera, therefore, plainly had "notice of the 'core of criminality'" for which he was tried and of which he was convicted. *Danielson,* 199 F.3d at 669 (quoting *Patino,* 962 F.2d at 266). Thus by providing the jury with a legally accurate definition of a firearm, Judge Lynch did not constructively amend the indictment.

Similarly, to the extent he advances it, Rivera's prejudicial-variance argument is

without merit. There was no variance. And in any event, Rivera was not prejudiced because the government provided him with notice that it also intended to rely upon the frame-or-receiver definition at trial. *See United States v. Helmsley,* 941 F.2d 71, 89 (2d Cir.1991) ("Variances are subject to the harmless error rule and thus are not grounds for reversal without a showing of prejudice to the defendant.").

We have considered Rivera's other contentions and find that they are without merit.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.[2]

---

**2.** Although Rivera has not moved for remand pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005), we will consider such a motion if it is filed within fourteen days of the issuance of this opinion.