**UNITED STATES OF AMERICA**

v.

**John A. GOTTI, Defendant.**

**No. 04 CR. 690(SAS).**

United States District Court,
S.D. New York.

Sept. 15, 2006.

Victor Hou, Miriam E. Rocah, Assistant United States Attorneys, New York, New York, for the Government.

Charles F. Carnesi, Garden City, New York, Seth Ginsberg, New York, New York, Sarita Kedia, New York, New York, for Defendant John A. Gotti.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

### I. INTRODUCTION

The defense now moves pursuant to Rule 29 of the Federal Rules of Criminal Procedure for a judgment of acquittal on Count Four of the 2006 indictment charging Gotti with violating section 1962(a) of Title 18 of the United States Code. The Government argues that it has shown that illicit income flowed both into and out of Hempstead after May 22, 2001, and that the evidence at trial has established that Gotti created the Hempstead holding corporation with racketeering proceeds and then operated this enterprise as a dummy company or alter ego to launder Gotti's racketeering proceeds.[1] The defense argues that the government has "failed to show any nexus—let alone a sufficient one—between monies obtained by the defendant from these racketeering activities between May 22, 2001 and May 2006 and

---

1. *See* 9/8/06 Letter from Assistant United States Attorneys ("AUSAs") Victor Hou and Miriam Rocah to the Court ("9/8/06 Government Letter") at 2.

those invested in Hempstead Corp."[2] For the following reasons, Gotti's motion to dismiss Count Four is granted.[3]

## II. LEGAL STANDARD

 To prevail on a motion for a judgment of acquittal under Rule 29, a defendant must show that "the evidence is insufficient to sustain a conviction."[4] To prevail, the defendant bears a "heavy burden" in challenging the sufficiency of the evidence.[5] The test established by the Supreme Court requires a court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[6] "But at the end of the day, 'if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt.'"[7] In evaluating the sufficiency of the evidence, the court must "view the evidence in the light most favorable to the Government, drawing all permissible inferences in the government's [sic] favor."[8] Where the government attempts to prove a fact that is also an element of the charged offense by circumstantial evidence, a court must be "satisfied that the inferences are sufficiently supported to permit a rational juror to find that the element, like all elements, is established beyond a reasonable doubt."[9]

Section 1962(a) targets the "use or investment" of income derived from racketeering, establishing that:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

 Although the "acts by which the tainted income is acquired need have no logical relationship to the enterprise in which investment will thereafter be made," there must nonetheless be "proof of the specified relationship between the racketeering acts and the RICO enterprise."[10] The statute does not require evidence tracing the income or proceeds invested in the enterprise directly to the racketeering acts, so long as the evidence demonstrates

---

**2.** 9/9/06 Letter from Sarita Kedia, defendant's counsel, to the Court ("9/9/06 Kedia Letter") at 2.

**3.** Count Three, which names Hempstead's parent company and is otherwise identical to Count Four, was dismissed on the record because that company's only activity in the limitations period was to file tax returns. *See* 9/6/06 Tr. at 3470–72. In addition, Count Three must also be dismissed for all the reasons discussed in this Opinion.

**4.** Fed.R.Crim.P. 29(a).

**5.** *United States v. Reifler,* 446 F.3d 65, 94 (2d Cir.2006) (quotation and citation omitted).

**6.** *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**7.** *United States v. Cassese,* 428 F.3d 92, 99 (2d Cir.2005) (quoting *United States v. Glenn,* 312 F.3d 58, 70 (2d Cir.2002)) (ruling on a Rule 29 motion).

**8.** *United States v. Friedman,* 300 F.3d 111, 123 (2d Cir.2002).

**9.** *United States v. Rodriguez,* 392 F.3d 539, 547 (2d Cir.2004) (quotation marks and citations omitted).

**10.** *United States v. Indelicato,* 865 F.2d 1370, 1384 (2d Cir.1989).

a "sufficient nexus" between the illicit money and the enterprise.[11]

Count Four charges that Gotti engaged in the following conduct through May 2006:

(1) receipt of income through construction industry extortion between 1991 and 2005, and loansharking between 1991 and 2002, and

(2) direct and/or indirect use and/or investment of that income in the (a) acquisition, (b) establishment; and (c) operation of Hempstead.

The charges against Gotti under section 1962(a) are governed by a five-year statute of limitations.[12] The Government has conceded that it must prove criminal conduct by the defendant after May 22, 2001, five years prior to the filing of the 2006 Indictment.[13] The Government also concedes that Gotti acquired and established Hempstead prior to the limitations period, in the early 1990s. Thus, to demonstrate that this count is not time-barred, the Government must prove that Gotti has continued to either use or invest illicit income to "operate" Hempstead at some point after May 22, 2001.[14]

## III. DISCUSSION

 In order to prove Count Four as charged in the indictment, the Government must prove beyond a reasonable doubt each of the following four elements of the offense: (1) that an enterprise existed; (2) that the enterprise engaged in or had some effect upon interstate commerce; (3) that the defendant derived income from loansharking and construction industry extortion; and (4) that after May 22, 2001, some part of that income was used in the operation of Hempstead. After much thought I conclude that there is no evidence, circumstantial or otherwise, from which a reasonable jury could find all these elements proven beyond a reasonable doubt. The Government has satisfied its burden of proof with respect to the first three elements. But the Government has not provided enough evidence, be it direct or circumstantial, upon which a reasonable juror could find beyond a reasonable doubt that there was a "sufficient nexus" between the receipt of illicit money from these racketeering acts and its investment in or withdrawal from Hempstead after May 22, 2001.[15]

The Government argues that all of Gotti's income is traceable to racketeering proceeds.[16] The accounting for his depos-

---

**11.** *United States v. McNary*, 620 F.2d 621, 628 (7th Cir.1980) (an interpretation of the statute requiring "that the evidence show a direct employment of illicit income" would "ignore the clear proscription of the statute and, as a practical matter, would render the statute ineffective against the use of interim depositories, commingled funds, and other surreptitious accounting techniques designed to create significant obstacles to the tracing of illicit income"). *Accord United States v. Cauble*, 706 F.2d 1322, 1342 (5th Cir.1983) ("the prosecution need prove only that illegally derived funds flowed into the enterprise; it need not follow a trail of specific dollars from a particular criminal act").

**12.** *See* 18 U.S.C. § 3282(a).

**13.** *See* 9/6/06 Tr. at 3480–82.

**14.** *See id.* at 3474.

**15.** *McNary*, 620 F.2d at 629.

**16.** *See* 9/8/06 Government Letter at 3 n. 2 ("The evidence is thus largely uncontested that until he went to jail in 1999, Gotti did not make any legitimate income—that *is*, every dollar he made was inexorably linked to his rank and position within the Gambino family. Thus, the jury could reasonably infer that any money that Gotti 'infused' into the Corporation were [sic] racketeering proceeds."); *compare with* 9/9/06 Kedia Letter at 2 ("Mr. Gotti has contested and continues to contest that all of his income prior to 1999 was illegitimate.").

its and withdrawals from his holding companies is a virtual black box because no one can accurately trace the source of these funds. There is also evidence to suggest that Gotti commingled personal and business funds and that he may have used the Hempstead corporate account as his "own personal piggy bank to make personal payments and investments."[17]

But these facts do not prove that Gotti invested the proceeds of loansharking and construction industry extortion into Hempstead. Unlike *United States v. Vogt*, where the defendant was charged with only one source of illegal income, namely bribes from a drug smuggling operation which were the predicate acts in the 1962(a) charge, here, there are many potential sources for Gotti's illegally obtained funds.[18] The indictment alleges that the funds used to operate Hempstead came from loansharking and construction industry extortion.[19] Even if a jury were to accept the Government's argument that Gotti never earned legitimate income, there are other equally plausible illicit sources of income—such as gambling and stock fraud. The Government must live with the indictment it brought.[20] There is simply no proof that Gotti invested the proceeds of loansharking and/or construction industry extortion in Hempstead.

The Government's second argument in support of the fourth element is related to Gotti's receipt of rents from the Hempstead property as well as his use of the property as collateral on a loan.[21] However, neither of these acts can be the basis for the current charges because of the 1999 plea agreement.[22] The Government correctly argues that while the 1999 plea agreement returned the Hempstead Avenue Property to Gotti's control, this agreement did not give Gotti immunity from any future prosecution for using the Property and its holding company to conceal or launder racketeering proceeds after the agreement.[23] But the Government long ago charged that the Hempstead Avenue Property was purchased through the use of illegally obtained funds and placed a lien on the property. By releasing the lien and returning the Property to Gotti as a result of Gotti's having satisfied the forfeiture requirements of the 1999 plea agreement,

---

**17.** 9/8/06 Government Letter at 8.

**18.** *See United States v. Vogt*, 910 F.2d 1184, 1193 (4th Cir.1990).

**19.** *See* 2006 Indictment ¶ 22 ("the defendant received income, directly or indirectly from a pattern of racketeering activity .... as set forth in paragraphs 18 and 20 [construction industry extortion] of Count Two [loansharking]").

**20.** *See United States v. Rivera*, 415 F.3d 284, 286 (2d Cir.2005) ("An indictment is constructively amended when the proof at trial broadens the basis of conviction beyond that charged in the indictment.") (quotation and citation omitted); *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir.2005) ("When the trial evidence or the jury charge operates to broaden the possible bases for conviction from that which appeared in the indictment,

the indictment has been constructively amended.") (internal quotations and citations omitted). *See also United States v. Ford*, 435 F.3d 204, 216 (2d Cir.2006) ("Constructive amendments are per se violations of due process.").

**21.** *See* 9/8/06 Government Letter at 5 (referring to a $100,000 loan that Hempstead Corporation authorized Gotti's wife to take out in April of 2005).

**22.** In a prior Opinion dismissing Count Seven charging Gotti with money laundering, the Court discussed the 1998 indictment and the 1999 plea agreement, explaining why fundamental fairness prevents the Government from charging Gotti with crimes covered by the plea agreement. *See United States v. Gotti*, No. S3 04 Cr. 690, 2006 WL 2472788, at *8–11 (S.D.N.Y. Aug.16, 2006).

**23.** *See* 9/8/06 Government Letter at 9–12.

the nexus between the original investment of illicit funds to obtain the Property and the current use of that property to obtain rental income or loan proceeds has been severed. In a May 24, 1999 letter, AUSA Bart G. Van de Weghe wrote that since the Hempstead Avenue Property was not to be forfeited, the Government would consent to Gotti's request to resume collecting the rents himself.[24] As a result, Gotti did not use the proceeds of "income derived . . . from a pattern of racketeering activity" by collecting rent from, or taking out loans against, the Hempstead Avenue Property within the limitations period.[25]

■ Furthermore, in light of the lengthy lapse between the pattern of racketeering acts and the use of the Hempstead Corporation within the limitations period, in addition to the intervening plea agreement, the Government cannot, as a matter of law, demonstrate that Gotti intended to conceal the illicit source of the funds by collecting rent and using the Property as collateral for a loan.[26] Section 1962(a) cannot be read so broadly as to be triggered by any use of an enterprise with any tie to racketeering activity, no matter how attenuated.[27] As a matter of law, the Government cannot prevail on its theory

that these withdrawals of funds from Hempstead within the limitations period constitute activities in violation of section 1962(a).

The strongest evidence related to operating Hempstead within the limitations period is the undisputed $200,000 loan Gotti made to the corporation in 1999 and 2000 to pay off Hempstead's tax lien.[28] The Government argues that unless the tax liens were paid the company could not operate. Although the loan money was infused before the limitations period, the corporation repaid Gotti into the limitations period. Gotti drew funds out of the corporate account to pay his personal expenses, and each divestment was credited against the balance of the loan until it was repaid some time on or after the end of 2001.

The first problem with this theory is that the Government has conceded that it cannot prove the source of funds that Gotti used to make the loan to the company.[29] In short, there is simply no evidence from which a reasonable juror could find that Gotti's $200,000 loan to Hempstead came from the specific racketeering sources al-

---

24. *See* 9/9/06 Kedia Letter at 6 (citing to Defendant's Ex. N, 5/24/99 Letter from AUSA van de Weghe to Kedia).

25. 18 U.S.C. § 1962(a).

26. *See Vogt,* 910 F.2d at 1199 ("every time tainted funds or assets purchased with tainted funds were run into or out of one of the enterprise corporations by or at [the defendant's] direction, this constituted a 'use' by him of those funds or their proceeds in the 'operation' of the enterprise in its intended corporations by or at [the defendant's] direction, this constituted a 'use' by him of those funds or their proceeds in the 'operation' of the enterprise in its intended function, which was precisely to serve as a concealing conduit or repository of the funds or assets").

27. *See Cauble,* 706 F.2d at 1332 (violation of section 1962(a) requires "a nexus between the enterprise, the defendant, and the pattern of racketeering activity").

28. *See* 9/6/06 Tr. at 3484 (statement of AUSA Hou after describing the loan to pay tax liens which was not repaid until the end of 2001, "I think on that argument alone, I think [the Government] satisfies the elements [of section 1962(a)]."); *see* 9/11/06 Tr. at 3743 (AUSA Hou giving the dates of the payments).

29. *See* 9/11/06 Tr. at 3741 (AUSA Hou stating that the money for the loan came from Gotti's personal account and that the Government contends that part of that payment "included the Big Geyser money that we believe is extortion").

leged in the indictment and not from another source.

In an attempt to plug this gap, the Government argues that the source of the payment for the tax liens came from the alleged extortion of Big Geyser, a beverage company.[30] If the source was Big Geyser, the Government has not shown that the monies from Big Geyser were extorted.[31] And if it was an extorted payment, that would be extortion of the beverage industry and not the charged construction industry extortion.

The next problem the Government faces is that in order to convict Gotti on the current charge it must still prove that the funds used to repay the loan, the divestment that occurred within the limitations period, were derived from the charged predicate acts. The Government has offered no such proof. Instead, it seems that the Government is asking the jury to make such an inference based on DiLeonardo's testimony that he gave a $50,000 payment of loansharking proceeds to Gotti's brother Peter sometime in 2000,[32] and that he continued to give Gotti's uncle Peter construction extortion proceeds until his own arrest in 2002, although he did not know whether these payments were in fact passed on to Gotti.[33] However, the evidence does not permit the jury to make

such an inference. An inference cannot be based on speculation or guesswork. It must be based on the evidence in the record.[34] There is no evidence whatsoever, either direct or circumstantial, that this money was received by Gotti, or, more importantly, that it was invested in Hempstead. Indeed, the funds used to make the payments to Gotti could just have easily come from the rental income. The Government cannot shift its burden of proof to Gotti and require him to prove that the repayments of the loan came solely from rental income or other legitimate sources.

The same is true of other arguments made by the Government—for example, that the lack of accounting transparency "for each cash rental payment received and deposited creates a gap from which illegal monies could have been deposited and made to look like rent."[35] At best, this is an argument that Gotti used Hempstead to launder money from unspecified criminal activities, not that he invested proceeds from loansharking and construction industry extortion into Hempstead. If this argument were credited it would result in an impermissible constructive amendment of the indictment.

Once again, the facts in *United States v. Vogt* stand in sharp contrast to those pre-

---

**30.** *See* 9/8/06 Government Letter at 3 (citing to Government Ex. 894).

**31.** *See* 8/25/06 Tr. at 2010–13 (FBI Agent Daniel Gill testifying that Big Geyser made payments into Gotti's personal account and that it was "associated" with the Gambino family).

**32.** *See* 9/11/06 Tr. at 3739 (AUSA Hou summarizing DiLeonardo's testimony on the $50,000 payment); *id.* at 3745 (Kedia stating, without contradiction, that the date of DiLeonardo payment was in April or May of 2000); *see* 8/30/06 Tr. at 2633–36 (DiLeonardo testifying that in the spring of 2000 he gave $50,000 to Peter Gotti).

**33.** *See* 9/11/06 Tr. at 3740–41 (AUSA Hou summarizing DiLeonardo's testimony on the construction extortion payment); *see* 8/30/06 Tr. at 2641–2 (DiLeonardo testifying that he gave construction industry extortion payments to Peter Gotti who said that he had to pass money on to several other people including the defendant).

**34.** *See* L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions, Criminal* ¶ 6.01 (Instruction 6–1) (2006); *see also* 3/8/06 Tr. in *United States v. Gotti*, No. S2 04 Cr. 690, at 2524 (Jury Charge).

**35.** 9/8/06 Government Letter at 7.

sented here. Vogt purchased a variety of assets including real estate, often making purchases before the corporation in whose name the asset was later titled had been formed. The court described how the jury could have reasonably inferred a sufficient nexus between the receipt of illicit money from the bribery scheme and the asset purchases in the name of his dummy corporations: "Because Vogt's legitimately acquired net worth, as evidenced by tax returns, would not have financed all these purchases, the jury could have found beyond a reasonable doubt that they were made at least in part with the money received as bribes from [a confessed drug smuggler], or proceeds of that money."[36] The Government has not offered any evidence that a comparable discrepancy exists in this case.

Instead, the Government argues that Gotti's lifestyle and investments, such as $96,000 in his brother's bakery, or $20,000 in Hottie Publishing, when taken in their entirety, allow the inference that Gotti was using income from loansharking and construction extortion to operate Hempstead.[37] But as just discussed, the evidence will not permit the jury to draw such an inference. Because it is equally likely that other sources of income—both legitimate and illicit—could account for such expenditures, this evidence cannot support a conviction.[38]

Therefore, Count Four must be dismissed. The Government has produced insufficient proof that Gotti either invested funds from construction industry extortion and loansharking in Hempstead or withdrew such funds during the limitations period. Even reviewing all the direct and circumstantial evidence in the light most favorable to the Government, no reasonable juror would find Gotti guilty beyond a reasonable doubt.

## IV. CONCLUSION

For the foregoing reasons, Gotti's Rule 29 motion to dismiss Count Four of the indictment is granted.

SO ORDERED.

---

**36.** *Vogt,* 910 F.2d at 1195.

**37.** *See* 9/8/06 Government Letter at 8.

**38.** In tax evasion cases, for example, the prosecution often establishes that a defendant's net worth is disproportionate to his reported taxable income. When this is proved, the prosecution must take the next step and show that it investigated and negated the possibility that the net worth was achieved from legitimate sources of income. *See Holland v. United States,* 348 U.S. 121, 135–36, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *United States v. Todaro,* 744 F.2d 5, 10 (2d Cir.1984). *See also United States v. Stewart,* 305 F.Supp.2d 368, 377 (S.D.N.Y.2004) (granting judgment of acquittal at the close of the Government's case on securities fraud count, when inferences of scienter and lack thereof were "nearly in equipoise [but][t]he Government has not offered any evidence that tips the balance in favor of a rational finding of criminal intent beyond a reasonable doubt"); *Cassese,* 428 F.3d 92 ("if the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt") (quotation and citation omitted).