IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 7, 2011

## STATE OF TENNESSEE v. GUY ALVIN WILLIAMSON

**Direct Appeal from the Circuit Court for Tipton County**
**No. 6572     Joseph H. Walker, Judge**

**No. W2011-00049-CCA-R3-CD  - Filed August 19, 2011**

The defendant, Guy Alvin Williamson, was convicted by a Tipton County Circuit Court jury of being a convicted felon in possession of a handgun and possession of a firearm while under the influence of alcohol or a controlled substance.  He was sentenced to an effective term of three years, suspended to probation.  On appeal, he argues that the trial court erred in denying his motion to suppress the evidence and dismiss the indictment and that the evidence was not sufficient to support his conviction for convicted felon in possession of a handgun.  After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

Gary Antrican, District Public Defender; and Parker O. Dixon, Assistant Public Defender, for the appellant, Guy Alvin Williamson.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

This case arises out of the pat-down of the defendant outside a motel room in Covington, Tennessee, during which officers discovered a handgun.  As a result, the defendant was indicted on charges of being a convicted felon in possession of a handgun and possession of a handgun while under the influence of alcohol or a controlled substance.

## Suppression Hearing

The defendant filed a motion to suppress the evidence and dismiss the indictment, arguing that he was detained and searched without probable cause or reasonable suspicion, based on information received from an anonymous tip.

At the suppression hearing, Officer William Nelson with the Covington Police Department testified that he was working the 10:00 p.m. to 6:00 a.m. shift on May 31, 2009, when he received a dispatch from 911 to respond to room twenty-one at the Baxter Motel because of "[a]n armed party and possible robbery in progress." Officer Nelson was familiar with the Baxter Motel and noted that the area was "known to be a place where local prostitutes, addicts, and sellers hang out." Officer Nelson "had a possible description of two subjects," one of whom he identified as the defendant. Officer Nelson said that the defendant's clothes matched the description he had received, but Officer Nelson did not "have it listed what the exact description given was" of the suspect.

When he arrived at the location, Officer Nelson saw two individuals standing on the second floor walkway balcony outside of room twenty-one. He and other Covington Police Department officers approached the individuals, and Officer Short conducted a <u>Terry</u> frisk of both men for officer safety. The frisk of the defendant revealed a small revolver in his right front shorts pocket. The defendant denied knowing to whom the gun belonged or how it had gotten into his pocket.

On cross-examination, Officer Nelson acknowledged that the warrant he signed did not indicate that an armed robbery was in progress, explaining that he did not mention an armed robbery in the warrant "[b]ecause it wasn't validated. We didn't charge him with robbery. . . . We didn't have a corroborating witness to that." Officer Nelson stated that dispatch had informed him that there was a possible armed robbery in progress, but upon listening to a recording of the call, he acknowledged that the report of an armed robbery in progress might not have come from dispatch. However, he maintained that "[i]f not given by Dispatch[,] it's when we arrived on the scene, but, yes, sir, there was an allegation of an armed robbery in progress."

Officer Nelson acknowledged that dispatch did not provide any information regarding the race or sex of the suspect, any kind of physical description, or the kind of clothes the suspect was wearing. He further acknowledged that the dispatch call did not provide information concerning how many people were around the area, about potential future movements or actions of the armed party, how long the armed party had been at the location, or specific information about the armed party's gun. Asked whether he had any reason to

believe that someone was in danger, Officer Nelson replied, "Armed party would mean the public is in danger because there's possibly an armed party."

Officer Nelson testified that, upon encountering the defendant and another man outside room twenty-one, he believed they were armed and dangerous "[b]ecause they were in front of the room given in the dispatch." Officer Nelson testified that, including himself, there were a total of six officers at the scene, but not every officer went upstairs to room twenty-one to confront the suspects. Although his weapon was holstered, he could not recall whether the other officers' weapons were also holstered.

On redirect examination, Officer Nelson estimated that it was "a minute or less" from the time he received the call from dispatch of an armed party standing outside room twenty-one to the time he arrived at the Baxter Motel.

The trial court denied the defendant's motion to suppress and dismiss the indictment against him.

**Trial**

At trial, Officer Michael Short with the Covington Police Department testified that he was working as a patrolman on the 6:00 p.m. to 2:00 a.m. shift on May 31, 2009. He was dispatched to the Baxter Motel at 1:25 a.m. in response to a complaint of an armed party in room twenty-one of the motel, and he arrived at the scene less than a minute after receiving the call. He noted that five other officers responded to the scene as well. As he was walking up the stairs to go to room twenty-one, Officer Short saw a white male exit room twenty-one, so he approached and patted down the individual. Finding nothing, Officer Short then went into the room to make sure no one else was present. Officer Short noted that, meanwhile, the defendant was standing approximately three doors down from room twenty-one, and Officer Rodney McCurrie approached him and patted him down. Officer McCurrie discovered a small handgun, a Rossi .22 caliber revolver, which was designed to expel a projectile, in the defendant's possession. Thereafter, the defendant was placed under arrest.

On cross-examination, Officer Short said he observed the handgun found on the defendant and noted that "[t]he grips [were] loose [o]n it." He also noted that it was not loaded and, when he tried to pull the trigger, the hammer did not recoil and the cylinder did not rotate. Thus, he hypothesized that the gun was not capable of being fired in its condition.

On redirect examination, Officer Short stated that, even if found not guilty, the defendant could not receive the handgun back because it is a firearm and he is a convicted

-3-

felon. Thereafter, the State submitted a certified copy of a previous felony judgment of conviction against the defendant.

Officer Rodney McCurrie with the Covington Police Department testified that during the early morning hours of May 31, 2009, he was dispatched to the Baxter Motel in response to an armed party complaint. Arriving at the scene in less than a minute, Officer McCurrie observed Officer Garrian with his weapon out and pointed at a subject on the balcony of the motel. Officers Short and Baskin were with a white male on the second floor, and two African-American male subjects were also on the balcony. Officer McCurrie testified that he was met at the stairwell by an African-American male who pointed up to the defendant on the second floor balcony and said that he was armed. Officer McCurrie approached the defendant and patted him down, finding a small revolver pistol in his right pocket. The defendant smelled of alcohol and had loud, slurred speech. On cross-examination, Officer McCurrie elaborated that the defendant was standing on the balcony a couple of rooms down from room twenty-one.

After the conclusion of the proof, the jury convicted the defendant as charged.

## ANALYSIS

### I. Motions to Dismiss and Suppress

The defendant argues that the trial court erred in denying his motion to suppress the evidence and dismiss the indictment against him. He asserts that he "was detained and searched without probable cause or reasonable suspicion based upon an anonymous tip."

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001); State v. Crutcher, 989 S.W.2d 295, 299 (Tenn. 1999); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). "[I]n evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

-4-

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" Keith, 978 S.W.2d at 865 (quoting Camara v. Municipal Court, 387 U.S. 523, 528 (1967)). A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." Id. (citations omitted).

One such exception to the warrant requirement is an investigatory stop, and subsequent frisk, as authorized by Terry v. Ohio, 392 U.S.1, 27 (1968), when an officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). Additionally, Terry authorizes a protective frisk if "the police officer has a reasonable suspicion based on specific and articulable facts that the suspect is armed." State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997) (citing Terry, 392 U.S. at 27). In evaluating whether a police officer has a reasonable suspicion supported by specific and articulable facts, a court must consider the totality of the circumstances. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). The totality of the circumstances includes, but is not limited to, an officer's objective observations, information from other law enforcement personnel or agencies, information from citizens, known patterns of criminal offenders, or deductions based upon an officer's experience. Watkins, 827 S.W.2d at 294. When evaluating the reasonableness of a police officer's suspicion, consideration can be given to the nature of the crime suspected. State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998) ("A frisk has been upheld as reasonable when the suspected crime might typically involve the use of a weapon; for example, a suspicion of robbery, burglary, rape, assault with a weapon, homicide, and large scale narcotics trafficking might allow an officer to reasonably infer that a weapon might be in the possession of the suspect.").

In denying the defendant's motion to suppress, the trial court found that Officer Nelson responded to a radio complaint of "some sort of armed encounter" at the Baxter Motel and had "a brief citizen encounter with the defendant, who was standing in a public place on a walkway used to access all rooms on that floor." The court observed that the officer noted the defendant smelled of alcohol and had slurred speech. The court concluded that the officer had reasonable suspicion to conduct a brief investigatory detention and pat-down of the defendant, for officer safety, based on the complaint that someone was armed.

We initially acknowledge that the court somewhat erred in stating that Officer Nelson conducted the search of the defendant, when Officer Nelson's testimony was that he was present when another officer conducted the search. However, such error is inconsequential to the determination of the issue. The evidence shows that the officers responded to a 911 call of an armed subject, around 1:30 in the morning, at a motel known to be the place of frequent criminal activity. In addition, the trial court implicitly accredited Officer Nelson's testimony that he learned upon arriving at the scene that there was an allegation of an armed robbery in progress. The defendant was in the close vicinity of the motel room given in the dispatch, and he was pointed out to Officer McCurrie by an African-American male at the scene as the armed individual. Even though it was an anonymous tip which directed the police officers to the area, the detention of the defendant was fully justified by what the officers learned and observed once they arrived at the scene. In light of the totality of the circumstances, we conclude that the police had reasonable suspicion to detain the defendant and that their search of the defendant was permissible under Terry and its progeny.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence convicting him of being a convicted felon in the possession of a handgun, arguing that the gun was "not capable of expelling a projectile." When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human

-6-

atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Tennessee Code Annotated section 39-17-1307 provides, in pertinent part: "A person commits an offense who possesses a handgun and has been convicted of a felony." Id. § 39-17-1307(c)(1). "Handgun" is defined as "any firearm with a barrel length of less than twelve inches (12") that is designed, made or adapted to be fired with one (1) hand." Id. § 39-11-106(a)(16). "'Firearm' means any weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use[.]" Id. § 39-11-106(a)(11).

The defendant does not dispute his status as one previously convicted of a felony. He only contends that because the handgun was not operable, he could not be convicted of the crime of felon in possession of a handgun. However, operability of the handgun is not required by the statute – only *design*, make, or adaption to expel a projectile is required. Officer Short clearly testified that the .22 caliber Rossi pistol found on the defendant was designed to expel a projectile. Our research has revealed no Tennessee case that has ruled on this issue, nor has the defendant provided this court with such. However, our research has revealed, as mentioned by the State in its brief, a D.C. Circuit case addressing a similar definition of firearm as applicable to a federal felon in possession of a firearm statute and concluding that there is no requirement that the firearm be operable. United States v. Gwyn, 481 F.3d 849, 855 (D.C. Cir. 2007) (where "firearm" is defined as "'any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[,]'" inoperability has no bearing on whether the weapon is a "firearm" within the meaning of the relevant statute). See also United States v. Rivera, 415 F.3d 284, 285 (2nd Cir. 2005); United States v. Adams, 137 F.3d 1298, 1300 (11th Cir. 1998); United States v. Yannott, 42 F.3d 999, 1006 (6th Cir. 1994); United States v. Perez, 897 F.2d 751, 754 (5th Cir. 1990) (stating that "[a]n inoperable firearm is nonetheless a firearm"); United States v. York, 830 F.2d 885, 891 (8th Cir. 1987). Even if the gun was presently inoperable, it was *designed* to expel a projectile, and thus the defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE